Ricky STIGALL, Plaintiff/Appellee,

v.

WICKES MACHINERY, A DIVISION OF THE WICKES CORPORATION, Robbins and Myers, Inc., Hunter Fan and Ventilating Company, and Robbins and Myers, Inc., Comfort Conditioning Division, Defendants/Appellants.

Supreme Court of Tennessee,
at Jackson.

Nov. 19, 1990.

Richard Glassman, Carl Wyatt, Glassman & Jeter, P.C., Memphis, for defendants/appellants.

Arnold Goldin, Lee J. Bloomfield, Goldin & Bloomfield, Memphis, for plaintiff/appellee.

O'BRIEN, Justice.

This is a tort action initiated by the plaintiff, Ricky Stigall, against Wickes Machinery, a division of the Wickes Corporation; the Wickes Corporation; Robbins and Myers, Inc.; and Robbins and Myers, Inc., Comfort Conditioning Division. Subsequently, upon appropriate motions filed, upon the record and his findings of fact and law the trial court held that plaintiff's cause of action against Robbins and Myers Inc.; Hunter Fan and Ventilating Company; and Robbins and Myers Inc. Comfort Conditioning Division, was barred by the Tennessee Workers' Compensation Act. Plaintiff consented to the dismissal of Hunter Fan and Ventilating Company and Robbins and Myers, Inc. Comfort Conditioning Division. Plaintiff appealed the trial court judgment granting the motion to dismiss as to all three defendants.

The Court of Appeals found that plaintiff was employed by Hunter Fan and Ventilating Company and was injured on 9 September 1981 while operating a die-casting machine in the course of his employment. On 18 June 1982 he settled a workers compensation claim against Hunter Fan. Shortly thereafter he filed this action against Wickes Machinery Company, manufacturer of the punch press, for breach of express and implied warranties and negligence. He sued Robbins and Myers, Inc., the parent corporation of Hunter Fan; Robbins and Myers, Comfort Conditioning Division and Hunter Fan for negligence in training and supervising him in the use of the die-casting machine and for negligence in its maintenance. The Court stated the issue to be whether Robbins and Myers, Inc. was sufficiently integrated with Hunter Fan so as to qualify as plaintiff's employer and thus be immunized from tort liability pursuant to the Tennessee Workers Compensation Act. After reviewing the record they held that Hunter Fan and Ventilating Company, the Tennessee corporation, was plaintiff's employer. They held that Robbins and Myers, Inc. was not the employer and could not

use the Tennessee Workers Compensation Act as a shield from third party actions. They reversed the trial court's grant of summary judgment and remanded the case for a trial on the merits.

Robbins and Myers, Inc. appealed to this Court charging the Court of Appeals erred in reversing the trial court's judgment dismissing plaintiff's cause of action. Appellee concurs in appellant's statement of the issue adding only the additional holding of the appeals court to be that Robbins and Myers, Inc., was not his employer at the time of his injury.

At the trial court hearing on Robbins and Myers' motion to dismiss, counsel for each of the parties agreed that the proceeding was "more in the nature of a motion for summary judgment." At the conclusion of the hearing the trial judge made findings of fact in which he determined that on 18 June 1982 a workers' compensation settlement was reached between Ricky Stigall and Hunter Fan Company, which originally was known as Hunter Fan and Motor Company. The name was changed to Hunter Fan and Ventilating Company in 1937. Robbins and Myers, Inc., purchased all of the outstanding stock of Hunter Fan and Ventilating Company in 1949 and owned all of the common stock of that company on the date of the hearing. Later Hunter Fan and Ventilating Company began to operate as a division of Robbins and Myers and adopted the trade name Hunter Division of Robbins and Myers. Hunter Fan and Ventilating Company is administered in the name of the Comfort Conditioning Division of Robbins and Myers, Inc. Plaintiff's application for employment on 4 November 1980 bore the imprint in the upper left hand corner, Hunter Division, Robbins and Myers, Inc., P.O. Box 14775, Memphis, Tennessee. Plaintiff's pay checks for November 1980 were drawn on the account of Robbins and Myers, Comfort Conditioning Division. The invoice for the machine on which plaintiff was injured was from Wickes Corporation to Hunter Division of Robbins and Myers. The officers of Hunter Fan and Ventilating Company were also officers of Robbins and Myers, Inc. Mr. Richard L. Fath deposed that these various corporations of which Robbins and Myers was the parent were all one and the same thing. The W–2 form of Mr. Stigall indicated he was an employee of Robbins and Myers, Inc., Comfort Conditioning Division. After his injury, plaintiff was afforded leave from Robbins and Myers, Inc. Comfort Conditioning Division. Mr. Fath stated he was comptroller of a new corporation, Hunter Melnor, Inc., which was known as Hunter Fan. In 1981 he was accounting operations manager, supervising cost accounting, financial analysis and budget for the company referred to as Hunter Fan Company of Robbins and Myers, Inc. which was the same entity as Hunter Fan and Ventilating Company. In 1981 Terence Tannehill was a vice-president of Robbins and Myers, Inc., as well as President of Hunter Fan and Ventilating Company and General Manager of the Comfort Conditioning Division of Hunter Fan and Ventilating Company. The persons with the right to deposit and withdraw funds from the account of Hunter Division of Robbins and Myers factory payroll account were the president of Robbins and Myers, President of Hunter Fan and Ventilating Company, Treasurer of Robbins and Myers, Comptroller Treasurer of Hunter Fan and Ventilating Company, and Budget Director for Hunter Fan and Ventilating Company. The various entities named were not operated apart from Robbins and Myers. Payment for the equipment upon which plaintiff was injured was made from the account styled Hunter Division of Robbins and Myers, Inc., First National Bank of Springfield, Ohio. Hunter Division of Robbins and Myers, Inc. was the same entity as Robbins and Myers Comfort Conditioning Division. Payroll checks made payable to Ricky Stigall were drawn on the Hunter Fan payroll account with the name on those checks being Robbins and Myers Comfort Conditioning Division. The trial judge concluded that all of the entities mentioned were one under the aegis of Hunter Fan Company and sustained the motion for summary judgment.

In arguing that the Court of Appeals has erred the appellant insists that plaintiff has

received all the benefits to which he is entitled under the Tennessee Workers' Compensation Act. They say these benefits were paid by the insurance carrier for Robbins and Myers, Inc. under a policy which carried as additional named insured, among others, Hunter Fan and Ventilating Company. They assert that plaintiff was an employee of Robbins and Myers, Inc., accepted workers' compensation benefits from that company, and is barred from any further recovery against it in this tort action.

The appellee contends that he is not prohibited by the act from bringing a third party claim against Robbins and Myers, Inc., the parent corporation of Hunter Fan. The argument made is that the two are separate corporations and having chosen this corporate structure for business purposes Robbins and Myers, Inc., is estopped from disregarding that structure and its legal consequences. Much of the argument dwells on what is referred to as appellant's attempt to "pierce" its own "corporate veil."

Employer is defined in T.C.A. § 50–6–102(a)(3) as follows:

"Employer" shall include any individual, firm, association or corporation, or the receiver, or trustee of the same, or the legal representative of a deceased employer, using the services of not less than five (5) persons for pay, ... [i]f the employer is insured, it shall include his insurer, unless otherwise herein provided. ...

The applicable provisions of T.C.A. § 50–6–103, state:

Every employer and employee subject to the Workers' Compensation Law shall, respectively, pay and accept compensation for personal injury or death by accident arising out of and in the course of employment without regard to fault as a cause of the injury or death ...

The additional provisions of the Act involved in this litigation in 1981, are found at T.C.A. § 50–6–108:

"The rights and remedies herein granted to an employee subject to the Workers' Compensation Law on account of personal injury or death by accident, ... shall exclude all other rights and remedies of such employee, his personal representative, dependents, or next of kin, at common law or otherwise, on account of such injury or death."

We agree with the conclusion of the trial judge that all the entities involved "were one," although we are of the opinion it is more apt to say that all of the entities were one under the aegis of Robbins and Myers, Inc. Although they are referred to by various names actually there are only two separate corporations involved in this phase of the litigation. The historical background contained in the record clearly shows that prior to the turn of the century Hunter Fan and Motor Company was established in the State of New York. In the early 1930's it removed all or part of its manufacturing operation to Memphis, Tennessee. Shortly thereafter, about 1937, the company incorporated under the name of Hunter Fan and Ventilating Company, Inc., referred to in exhibits to the record as Hunter Fan and Ventilating Co., Inc. of New York. On 8 November 1949 Robbins and Myers, Inc., an Ohio Corporation, purchased all of the issued and outstanding common stock of Hunter Fan and Ventilating Company. From that day forward Hunter Fan and Ventilating Company, Inc., a Tennessee corporation, operated as a subsidiary of Robbins and Myers, Inc. The factory and general sales office were maintained in Memphis, with auxiliary sales offices in various States about the entire country. On 14 November 1949 Robbins and Myers, Inc. opened a separate checking account in the sum of $200,000 to the credit of Hunter Fan and Ventilating Company, Inc. Accounts in the name of Hunter Fan and Ventilating Company, Inc. of New York were closed. In September of 1956 a trade name, Hunter Division—Robbins and Myers, Inc., was adopted for use by Hunter Fan and Ventilating Company, Inc. In the intervening years various bank accounts were opened in the name of Hunter Division, Robbins and Myers, Inc., including a general fund account and three separate payroll accounts. All of the various bank

transactions, including authorizations to make withdrawals from the various Hunter Division—Robbins and Myers, Inc. bank accounts were authorized by the Board of Directors of Robbins and Myers, Inc. Although the Memphis firm Hunter Fan and Ventilating Company, Inc., was commonly referred to over the years as Hunter Fan, unquestionably, from the year 1956 it operated and conducted its business as Hunter Division—Robbins and Myers Inc. At some time between that date and the end of 1980 the name Robbins and Myers Comfort Conditioning Division was adopted by Robbins and Myers, Inc. Although the corporate charter for Hunter Fan and Ventilating Company was not surrendered, the corporation continued to function and operate as an integral part of Robbins and Myers, Inc. under the trade name Hunter Division, Robbins and Myers, Inc. at least until, and perhaps subsequent to, the formation of Robbins and Myers, Inc., Comfort Conditioning Division. As suggested in *Latham v. Technar, Inc.*, 390 F.Supp. 1031, 1037 (E.D.Tenn.1974), the two companies were so completely integrated and commingled that neither could be realistically viewed as a separate economic entity.

According to plaintiff's employment application he was a high school graduate with two years of college. His application for employment clearly bears the logo Hunter Division of Robbins and Myers, Inc. The records contain copies of payroll checks issued to plaintiff clearly showing the payor to be Robbins and Myers Comfort Conditioning Division. He was employed nearly a year, drawing weekly paychecks, before his injury on 9 September 1981. A W–2 employee withholding form issued to plaintiff for the year 1981 indicates his employer to be Robbins and Myers, Inc., Comfort Conditioning Division. The initial report of injury filed with the State Workers' Compensation Department indicates plaintiff's employer to be Robbins and Myers, Inc., Comfort Conditioning Division. The Workers' Compensation Insurance Carrier for Robbins and Myers, Inc. was National Union Fire Insurance Company of Pittsburgh, Pennsylvania. The policy

was issued to Robbins and Myers, Inc. The premium for the policy was paid by Robbins and Myers, Inc. and listed Hunter Fan and Ventilating Company, among others, as additional insured. Drafts issued for temporary total disability payments indicate the insured to be both Robbins and Myers, Inc., and Hunter Fan. Two of these offered in evidence as well as plaintiff's pre-employment physical examination form bears the legend, Comfort Conditioning Division—Robbins and Myers, Inc. It is inconceivable that he did not know that Robbins and Myers, Inc., was his employer.

Plaintiff's argument that defendant is attempting to "pierce" its own "corporate veil," simply cannot withstand scrutiny. As this Court noted in *Continental Bankers Life, etc. v. Bank of Alamo*, 578 S.W.2d 625, 631 (Tenn.1979), "[t]he Tennessee cases involving efforts to disregard corporate entities and hold one corporation liable for the debts of another, often referred to as 'piercing the corporate veil,' provide no significant analogy to the instant case. In the considerable body of American case law, all of the numerous theories, such as alter ego, instrumentality, identity, agency and estoppel, have been articulated in widely varying language, and each theory has been criticized by one or more authoritative sources."

The term is an amorphism. Almost without exception, the relevant cases involve efforts to reach the assets of a parent corporation for the debts of a subsidiary. See *Continental Bankers, supra*, p. 633. The conditions under which the corporate entity will be disregarded vary according to the circumstances present in each case and the matter is particularly within the province of the trial court. *Electric Power Board v. St. Joseph Valley Structural Steel*, 691 S.W.2d 522, 526 (Tenn.1985). We are of the opinion that the avenue to follow in a case of this nature where two discrete corporate entities are so inextricably involved is found in *Neese v. Fireman's Fund Insurance Co.*, 386 S.W.2d 918, 921, 53 Tenn.App. 710 (1964), in which the court concluded that parent and subsidiary corporations were "identical or indistinguishable

in fact." In doing so they cited from *Fletcher on Corporations,* Perm.Ed. (1963), § 43, which we consider to be pertinent to this case:

> A very numerous and growing class of cases wherein the corporate entity is disregarded is that wherein it is so organized and controlled, and its affairs are so conducted, as to make it merely an instrumentality, agency, conduit, or adjunct of another corporation. The control necessary to invoke what is sometimes called the 'instrumentality rule' is not mere majority or complete stock control but such domination of finances, policies and practices that the controlled corporation has, so to speak, no separate mind, will or existence of its own and is but a business conduit for its principal. * * * One corporation may be disregarded where the two are identical or indistinguishable in fact. Unless it is a mere instrumentality or agency or adjunct in that sense, or as (sic) a sham or is used in fraud, by the dominant corporation, it will not be disregarded; and it will not be disregarded unjustly.

We define the term "unjustly" in this case, in its generic sense, to mean a blade that cuts both directions in equidistance so as to preserve the right of an innocent victim from predation by a corporation or its officers or owners on the one hand, and the right of corporate citizens to conduct business in a legitimate, and lawful fashion on the other, unless it can be shown to the contrary that the corporate structure is an artifice created for the purpose of committing fraud or injury upon the complaining victim. Plaintiff has failed to carry the burden to show that the parent and subsidiary relationship in this case was structured for that purpose.

Plaintiff seems to argue that Robbins and Myers, Inc. has endeavored to show that both it and Hunter Fan and Ventilating Company, Inc., its subsidiary, are to be considered as the claimant's employer. That is not the case. Appellant has never denied that each is indeed a separate corporate entity. However, it is indisputable that since the acquisition of Hunter Fan and Ventilating Company by Robbins and Myers, Inc., the subsidiary has functioned exclusively as the manufacturing and sales distribution agent of the parent corporation.

It is argued further that there were admissions made by the defendant in response to the plaintiff's interrogatories regarding separate corporate identity. There are ambiguities in the interrogatories and the responses, as well as in depositions taken and relied upon by the plaintiff. This was settled by the trial judge who analyzed all of the pleadings and the evidence. He found that defendant was entitled to a judgment as a matter of law. We concur in his findings. We find no confusion between the public perception of the relationship between Robbins and Myers, Inc., and Hunter Fan and the economic and legal reality existing, as suggested by plaintiff. There is nothing in this record to indicate any such separation in fact.

On the issue of allegations of negligence propounded by the plaintiff it is insisted that it is entirely conceivable that Robbins and Myers, Inc. and its subsidiary would have business relations which would provide for supervision and training of its employees while remaining separate and distinct entities. Plaintiff relies heavily on *Gaines v. Excel Industries, Inc.,* 667 F.Supp. 569 (M.D.Tenn.1987); and *Boggs v. Blue Diamond Coal Co.,* 590 F.2d 655 (6th Cir.1978), to sustain this argument. We find neither of these decisions applicable to the situation at hand. Any further comparison or discussion would serve no useful purpose.

Finally, plaintiff argues that separate corporate entities are to be treated separately for all purposes and therefore that the parent corporation should not share the tort immunity of its subsidiary. We have discussed this theory fully and have rejected it for the reasons stated. There is nothing in this record to establish that Hunter Fan and Ventilating Company was anything other than totally subservient to its parent corporation, or that Robbins and Myers, Inc. was not, in fact defendant's employer.

The judgment of the Court of Appeals is reversed and the case is remanded to the trial court for all other and further proceedings required. The costs of this appeal are adjudged against the plaintiff.

DROWOTA, C.J., COOPER and HARBISON, JJ., and SUMMERS, Special Justice, concur.