**Kamarjah GORDON et al.**

v.

**GREENVIEW HOSPITAL, INC., d/b/a Greenview Regional Hospital.**

Supreme Court of Tennessee,
at Nashville.

June 3, 2009 Session.

Dec. 17, 2009.

**640**

Carroll C. Johnson, III, Memphis, Tennessee, and Timothy R. Holton, Memphis,

Tennessee, for the appellant, Kamarjah Gordon, Deceased, and Tosha Gordon.

Bradley A. Case, Louisville, Kentucky, and John F. Floyd and Mandy Langford, Nashville, Tennessee, for the appellee, Greenview Hospital, Inc.

## OPINION

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which JANICE M. HOLDER, C.J., CORNELIA A. CLARK, GARY R. WADE, and SHARON G. LEE, JJ., joined.

This appeal involves the propriety of Tennessee's courts exercising general personal jurisdiction over a Kentucky corporation. The Kentucky corporation and other Tennessee parties were named as defendants in a medical malpractice action filed in the Circuit Court for Davidson County. The trial court granted the Kentucky corporation's motion for summary judgment on the ground of lack of personal jurisdiction, and the Court of Appeals affirmed. *Gordon v. Greenview Hosp., Inc.*, No. M2007–00633–COA–R3–CV, 2008 WL 802463 (Tenn.Ct.App. Mar.24, 2008). We granted the plaintiffs' application for permission to appeal to determine whether the courts of Tennessee, consistent with the due process clause, may exercise personal jurisdiction over the Kentucky corporation. We have determined that (1) the Kentucky corporation's corporate filings in Kentucky listing the Tennessee address of the legal department of its parent corporation as its current principal office, (2) the fact that many of the corporation's officers and directors maintain offices in Tennessee, and (3) the fact that the Kentucky corporation is a subsidiary and remote subsidiary of two corporations whose primary places of business are in Tennessee are insufficient, individually and collectively, to provide a basis for exercising general personal jurisdiction over the Kentucky corporation.

## I.

Greenview Hospital, Inc. ("Greenview") is a Kentucky corporation that owns and operates the Greenview Regional Hospital in Bowling Green, Kentucky. Greenview has no physical facilities in Tennessee, and it does not provide hospital or other healthcare services in Tennessee. In addition, Greenview owns no property in Tennessee, is not registered to do business in Tennessee, and has no registered agent for service of process in Tennessee.

Greenview is a subsidiary of the TriStar Health System ("TriStar"), which is, in turn, a subsidiary of Hospital Corporation of America, Inc. ("HCA"). The principal offices of TriStar and the legal department of HCA are located in Tennessee. TriStar operates fourteen facilities in Tennessee and Kentucky, including Greenview Regional Hospital. TriStar's website, which provides a physician referral service in Tennessee and south central Kentucky, contains information about Greenview Regional Hospital.

The events that gave rise to this lawsuit unfolded on April 10, 2005.[1] Tosha Gordon, a resident of Warren County, Kentucky, came to the emergency room at Greenview Regional Hospital. She was pregnant, and her blood pressure was elevated. The Greenview staff instructed her to contact Vanderbilt University Medical Center ("Vanderbilt") in Nashville where

---

1. The recitation of the following facts is based on the pleadings and is not determinative of any factual disputes going to the merits of the complaint on remand or at trial. The inclusion of any fact should not be construed to prevent the parties from including any contrary evidence or to prevent the trial court from making contrary findings. *See Masada Inv. Corp. v. Allen*, 697 S.W.2d 332, 339–40 (Tenn.1985).

her regular obstetrician practiced. She did so, and the Vanderbilt staff instructed Ms. Gordon to contact her obstetrician the following day.

Rather than waiting until the next day, Ms. Gordon traveled to the emergency room at Centennial Medical Center ("Centennial") in Nashville. She complained of a headache, swollen feet, and an elevated blood pressure. Ms. Gordon was admitted for observation at the Women's Hospital at Centennial Medical Center after being diagnosed with pregnancy-induced hypertension.

The staff at the Women's Hospital discharged Ms. Gordon during the afternoon of April 10, 2005. Later in the day, she returned to the emergency room at Greenview Regional Hospital, complaining of elevated blood pressure, abdominal pain, and contractions. An emergency Caesarian section was performed after the fetal monitor revealed significant fetal bradycardia (a slower than normal heart rate). Ms. Gordon's baby, Kamarjah Gordon, died prior to delivery.

On March 28, 2006, Ms. Gordon filed suit in the Circuit Court of Davidson County seeking to recover damages for various negligent acts that she alleged caused Kamarjah Gordon's death. She named as defendants Dr. Jeffrey D. Draughn (her treating physician at Centennial), Tennessee Women's Care, P.C. (Dr. Draughn's employer), HCA Health Services of Tennessee, Inc. d/b/a Centennial Medical Center, Vanderbilt University Medical Center, Dr. Melody Adler (her

obstetrician), and Greenview Hospital, Inc. d/b/a Greenview Regional Hospital.[2]

In its answer filed May 5, 2006, Greenview asserted that it was not subject to personal jurisdiction in Tennessee. On August 14, 2006, Greenview filed a motion for summary judgment based on a lack of personal jurisdiction under either Tennessee's long arm statute or the Due Process Clause of the United States Constitution. The trial court granted the motion on February 22, 2007, and Ms. Gordon appealed.

The Court of Appeals affirmed the trial court's conclusion that there was no basis for the exercise of personal jurisdiction over Greenview. Noting that the issue should have been decided on a motion to dismiss for lack of jurisdiction rather than a motion for summary judgment, the Court of Appeals concluded that "[f]or a court to exercise general personal jurisdiction over an out-of-state defendant, 'the proof must show that the defendant maintains "continuous and systematic" contacts with the foreign state, and those contacts "give rise to the liabilities sued on." ' " *Gordon v. Greenview Hosp., Inc.*, No. M2007–00633–COA–R3–CV, 2008 WL 802463, at *3 (Tenn.Ct.App. Mar.24, 2008) (quoting *Lucite Int'l, Inc. v. Runciman*, No. W2004–00314–COA–R3CV, 2005 WL 394775, at *4 (Tenn.Ct.App. Feb.18, 2005) (No Tenn. R.App. P. 11 application filed)). It further found that Ms. Gordon had not established the requisite minimum contacts between Greenview and Tennessee and that jurisdiction could not be premised entirely on the fact that personal jurisdiction existed over HCA, Greenview's parent

**2.** Several of these defendants were misnamed in the original complaint. An amended complaint was filed February 6, 2007 to reflect Dr. Adler's corrected first name and the correct name of Dr. Draughn's employer. An agreed order of dismissal and substitution filed June 1, 2006 and the amended complaint filed on February 6, 2007 both reflect the substitution of HCA Health Services of Tennessee, Inc., d/b/a Centennial Medical Center for Centennial Medical Center and Women's Hospital at Centennial. Vanderbilt University, the legal entity that owns and operates Vanderbilt University Medical Center, continues to be misnamed.

corporation. *Gordon v. Greenview Hosp., Inc.*, 2008 WL 802463, at *4. Ms. Gordon appealed to this Court, arguing that Tennessee can properly exercise personal jurisdiction over Greenview based on the corporation's contacts with Tennessee and on its affiliation with Tennessee corporations.

## II.

■ At the outset, we turn to the distinction drawn by the Court of Appeals between a Tenn. R. Civ. P. 12.02(2) motion to dismiss for lack of personal jurisdiction and a Tenn. R. Civ. P. 56 motion for summary judgment. The Court correctly pointed out that questions regarding personal jurisdiction must be raised and decided using the procedures applicable to Tenn. R. Civ. P. 12.02(2). Unlike Tenn. R. Civ. P. 12.02(6) motions for failure to state a claim that are supported or opposed by matters outside the pleadings and Tenn. R. Civ. P. 12.03 motions for judgment on the pleadings, Tenn. R. Civ. P. 12.02(2) motions are not converted to motions for summary judgment when either or both parties submit matters outside the pleadings either in support of or in opposition to the motion. *See Chenault v. Walker*, 36 S.W.3d 45, 55 (Tenn.2001).

■ Tenn. R. Civ. P. 1 reflects a policy favoring the "just, speedy, and inexpensive determination of every action." To further this policy, we have recognized that motions should be construed based on their substance rather than their title. *Tenn. Farmers Mut. Ins. Co. v. Farmer*, 970 S.W.2d 453, 455 (Tenn.1998); *Bemis Co. v.*

*Hines*, 585 S.W.2d 574, 576 (Tenn.1979). Accordingly, like the Court of Appeals, we will deem Greenview's motion to be a Tenn. R. Civ. P. 12.02(2) motion to dismiss for lack of jurisdiction.

■ A Tenn. R. Civ. P. 12.02(2) motion to dismiss for lack of personal jurisdiction challenges the trial court's ability to proceed with the claim or claims against a defendant. 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1349, at 56 (3d ed. 2004) (hereinafter "5B *Federal Practice and Procedure* ").[3] It embodies a threshold issue that normally should be adjudicated early in the proceeding because, if the motion is granted, it will produce an overall savings in time and resources and will also avoid delay in the disposition of cases. 5B *Federal Practice and Procedure* § 1349, at 56–57.

■ The plaintiff bears the ultimate burden of demonstrating that the trial court may properly exercise personal jurisdiction over a defendant. *Chenault v. Walker*, 36 S.W.3d at 56; *Davis Kidd Booksellers, Inc. v. Day–Impex, Ltd.*, 832 S.W.2d 572, 577 (Tenn.Ct.App.1992). This burden is ordinarily not a heavy one, 5B *Federal Practice and Procedure* § 1351, at 274, because personal jurisdiction need only be demonstrated by a preponderance of the evidence. 5B *Federal Practice and Procedure* § 1351, at 287.

■■ A defendant may take issue with personal jurisdiction by filing a 12.02(2) motion [4] prior to filing its answer or by

---

3. When construing the Tennessee Rules of Civil Procedure, "we may look to the interpretation of comparable federal rules for guidance." *Thomas v. Oldfield*, 279 S.W.3d 259, 262 n. 3 (Tenn.2009) (citing *Williamson County v. Twin Lawn Dev. Co.*, 498 S.W.2d 317, 320 (Tenn.1973)). Both the Federal and Tennessee Rules of Civil Procedure permit the

defendant to challenge the personal jurisdiction of the court. Fed.R.Civ.P. 12(b)(2); Tenn. R. Civ. P. 12.02(2).

4. Challenges to personal jurisdiction under Tenn. R. Civ. P. 12.02(2) differ from challenges to subject matter jurisdiction under Tenn. R. Civ. P. 12.02(1). Subject matter

including this defense in its answer. Tenn. R. Civ. P. 12.08. If a defendant raises the defense by motion, the defendant may, but is not required to, support the motion with affidavits or other evidentiary materials. *Humphreys v. Selvey,* 154 S.W.3d 544, 550 n. 5 (Tenn.Ct.App.2004). However, if a defendant supports its motion with affidavits, the plaintiff must establish its prima facie showing of personal jurisdiction over the defendant by filing its own affidavits or other written evidence. *Chenault v. Walker,* 36 S.W.3d at 56; *Mfrs. Consolidation Serv., Inc. v. Rodell,* 42 S.W.3d 846, 854–55 (Tenn.Ct.App.2000).

■■ The trial court is not required to make findings of fact with regard to a Tenn. R. Civ. P. 12.02(2) motion. Rather, the trial court's responsibility is to determine whether the plaintiff has alleged or presented sufficient facts to survive the motion to dismiss. *Progeny Mktg. v. Farmers & Merchs. Bank,* No. M2003–02011–COA–R3–CV, 2005 WL 819732, at *2 (Tenn.Ct.App. Apr.7, 2005) (No Tenn. R.App. P. 11 application filed); *Chase Cavett Servs., Inc. v. Brandon Apparel Group, Inc.,* No. 02A01–9803–CH–00055, 1998 WL 846708, at * 1 (Tenn.Ct.App. Dec.7, 1998) (No Tenn. R.App. P. 11 application filed). Dismissal is proper only if all the specific facts alleged by the plaintiff collectively fail to establish a prima facie case for personal jurisdiction. *Mfrs. Consolidation Serv., Inc. v. Rodell,* 42 S.W.3d at 855.

■■ Filing affidavits or other evidentiary materials to support or oppose a Tenn. R. Civ. P. 12.02(2) motion does not convert the motion into a motion for summary judgment. *Chenault v. Walker,* 36 S.W.3d at 55. A trial court must take as true all the allegations in the plaintiff's complaint and supporting papers, if any, and must resolve all factual disputes in the plaintiff's favor. *Chenault v. Walker,* 36 S.W.3d at 56; *Mfrs. Consolidation Serv., Inc. v. Rodell,* 42 S.W.3d at 855. A trial court has considerable procedural leeway in addressing the motion. 5B *Federal Practice and Procedure* § 1351, at 305. The court should proceed carefully and cautiously, *Chenault v. Walker,* 36 S.W.3d at 54, to avoid improperly depriving the plaintiff of its right to have its claim adjudicated on the merits. 5B *Federal Practice and Procedure* § 1349, at 58. Accordingly, in addition to considering the complaint and the supporting or opposing affidavits, the trial court may, in particularly complex cases, allow limited discovery,[5] hold an evidentiary hearing, *Chenault v. Walker,* 36 S.W.3d at 56 n. 3, or even hold the motion in abeyance until a trial on the merits, Tenn. R. Civ. P. 12.04. 5B *Federal Practice and Procedure* § 1351, at 308–09.

■ A Tenn. R. Civ. P. 12.02(2) motion to dismiss for lack of personal jurisdiction is a motion in abatement, not a motion in bar. *Nicholstone Book Bindery, Inc. v. Chelsea House Publishers,* 621 S.W.2d 560, 561 n. 1 (Tenn.1981); *Mfrs. Consolidation Serv., Inc. v. Rodell,* 42 S.W.3d at 855 n. 5. Because the motion is not directed at the merits of the plaintiff's claims, an order dismissing a case for lack of personal juris-

---

jurisdiction may be questioned using either a "facial" or "factual" challenge. *Staats v. McKinnon,* 206 S.W.3d 532, 542 (Tenn.Ct. App.2006). This distinction is not recognized with regard to challenges to personal jurisdiction. *Gundaker/Jordan Am. Holdings, Inc. v. Clark,* No. 04–226–JBC, 2008 WL 4585462, at *2 (E.D.Ky. Oct.14, 2008).

5. *See Sutton v. Stolt–Nielsen Transp. Group, Ltd.,* No. E2008–01033–COA–R3–CV, 2009 WL 499521, at *3 (Tenn.Ct.App. Feb.27, 2009) (No Tenn. R.App. P. 11 application filed).

diction is not an adjudication on the merits. Tenn. R. Civ. P. 41.02(3).

 A decision regarding the exercise of personal jurisdiction over a defendant involves a question of law. Accordingly, the appellate courts will review a trial court's decision to grant or deny a Tenn. R. Civ. P. 12.02(2) motion de novo with no presumption of correctness for the purpose of determining whether the plaintiff has made out a prima facie basis for the exercise of personal jurisdiction over the defendant. *Woodruff v. Anastasia Int'l, Inc.*, No. E2007–00874–COA–R3CV, 2007 WL 4439677, at *3 (Tenn.Ct.App. Dec.19, 2007) *perm. app. withdrawn* (Apr. 7, 2008); *In re Clark,* No. W2005–01687–COA–R3–JV, 2007 WL 152537, at *10 (Tenn.Ct.App. Jan.22, 2007) (No Tenn. R.App. P. 11 application filed); *Progeny Mktg. v. Farmers & Merchs. Bank,* 2005 WL 819732, at *1; *Chase Cavett Servs., Inc. v. Brandon Apparel Group, Inc.,* 1998 WL 846708, at *1.

### III.

The outer limits of the ability of Tennessee's courts to exercise jurisdiction over nonresident defendants are defined by statute. In 1972,[6] the Tennessee General Assembly amended Tennessee's long-arm statute to provide that "[p]ersons who are nonresidents of this state … are subject to the jurisdiction of the courts of this state as to any action or claim for relief arising from … [a]ny basis not inconsistent with the constitution of this state or of the United States." Tenn.Code Ann. § 20–2–214(a) (2009).

The intent of the 1972 amendment was to lengthen the reach of the long-arm statute to the farthest extent permitted by due process. Accordingly, Tennessee's courts

later observed that the addition of Tenn. Code Ann. § 20–2–214(a)(6) converted the long-arm statute from a "single enumerated act" statute to a "minimum contacts" statute that permitted Tennessee courts to exercise personal jurisdiction over nonresident defendants to the full limit permitted by due process. *Masada Inv. Corp. v. Allen,* 697 S.W.2d at 334; *Shelby Mut. Ins. Co. v. Moore,* 645 S.W.2d 242, 245–46 (Tenn.Ct.App.1981).

While there was little disagreement regarding the appropriateness of broadening the scope of the ability of Tennessee's courts to exercise personal jurisdiction over nonresident defendants, there was some concern that the wording of Tenn. Code Ann. § 20–2–214(a)(6) did not match the General Assembly's intent. Robert Banks, Jr., *The Future of General Jurisdiction in Tennessee,* 27 U. Mem. L.Rev. 559, 581–82 (1997) (hereinafter "Banks"). Questions were raised regarding whether Tenn.Code Ann. § 20–2–214(a)(6) permitted the exercise of general personal jurisdiction over a nonresident defendant, corporate or otherwise, who did not have a registered agent for service of process in Tennessee. Banks, 27 U. Mem. L.Rev. at 585. Accordingly, there were calls to amend Tennessee's long-arm statute to make clear that Tennessee's courts could exercise personal jurisdiction over nonresident defendants solely on the basis of their business activities in Tennessee. Banks, 27 U. Mem. L.Rev. at 596.

In 1997, the Tennessee General Assembly enacted new statutes addressing the exercise of personal jurisdiction by Tennessee's courts.[7] These statutes did not repeal Tenn.Code Ann. § 20–2–214. Now, in addition to Tenn.Code Ann. § 20–2–

---

**6.** Act of Apr. 4, 1972, ch. 689, 1972 Tenn. Pub. Acts 688.

**7.** Act of May 1, 1997, ch. 226, 1997 Tenn. Pub. Acts 366, codified at Tenn.Code Ann. §§ 20–2–221 through –225 (2009).

214(a)(6), Tennessee's courts may exercise personal jurisdiction "[o]n any other basis authorized by law" or on "[a]ny basis not inconsistent with the constitution of this state or of the United States." Tenn.Code Ann. § 20–2–225(1), (2).

During the ensuing twelve years, the courts have had little occasion to interpret the effect of the 1997 legislation on the ability of Tennessee's courts to exercise jurisdiction over nonresident defendants. The United States District Court for the Eastern District of Tennessee has observed that the 1997 statutes do not conflict with Tenn.Code Ann. § 20–2–214 and, if anything, "seem to expand the statutory bases upon which Tennessee can assert *in personam* jurisdiction over nonresidents." *Meco Corp. v. MRMC, Inc.*, No. 2:04–CV–431, 2005 WL 2139411, at *2 (E.D.Tenn. Aug.26, 2005). The Court of Appeals has noted that many of the provisions of Tenn. Code Ann. § 20–2–214 are repeated in the 1997 statutes. *Orion Pac., Inc. v. Exch. Plastics Co.*, No. M2000–02345–COA–R3–CV, 2001 WL 434870, at *2 n. 1 (Tenn.Ct. App. Apr.30, 2001) (No Tenn. R.App. P. 11 application filed). Citing both Tenn.Code Ann. § 20–2–214(a)(6), and Tenn.Code Ann. § 20–2–225(2), the Court of Appeals has reiterated that "Tennessee's long-arm statute permits the courts of this state to exercise jurisdiction upon, *inter alia*, '[a]ny basis not inconsistent with the constitution of this state or of the United States.'" *Mfrs. Consolidation Serv., Inc. v. Rodell*, 42 S.W.3d at 855. We agree with this conclusion.

## IV.

■ The authority of courts to exercise personal jurisdiction over nonresident defendants is circumscribed by the Due Process Clause of the Fourteenth Amendment. When the issue of personal jurisdiction arises, due process obligates the courts to ascertain whether it is "fair and substantially just to both parties to have the case tried in the state where the plaintiff has chosen to bring the action." *Masada Inv. Corp. v. Allen*, 697 S.W.2d at 335 (quoting *Shelby Mut. Ins. Co. v. Moore*, 645 S.W.2d at 246); *see also Davis Kidd Booksellers, Inc. v. Day–Impex, Ltd.*, 832 S.W.2d at 575; 16 James Wm. Moore, *Moore's Federal Practice* § 108.41[1], at 108–47 (3d ed.2009) (hereinafter "16 *Moore's Federal Practice*").

Tennessee courts have generally held that the due process requirements of the Constitution of Tennessee are co-extensive with those of the United States Constitution. *Gallaher v. Elam*, 104 S.W.3d 455, 463 (Tenn.2003); *Newton v. Cox*, 878 S.W.2d 105, 110 (Tenn.1994). We have also drawn helpful guidance from the decisions of the federal courts, particularly the United States Supreme Court, with regard to the application of due process principles to the exercise of personal jurisdiction over the nonresident defendants. Accordingly, our inquiry in this case will focus on whether the exercise of jurisdiction over Greenview is consistent with the due process requirements of the United States Constitution.

■ Approximately sixty years ago, the United States Supreme Court noted that personal jurisdiction could be exercised over a nonresident defendant only if the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)); *see also J.I. Case Corp. v. Williams*, 832 S.W.2d 530, 531–32 (Tenn. 1992). This is a two-part test which requires evaluating whether the requisite

minimum contacts are present and whether the exercise of jurisdiction is fair. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *Davis Kidd Booksellers, Inc. v. Day–Impex, Ltd.*, 832 S.W.2d at 575.

 The defendant's contacts with the forum state need not be physical, and the court will primarily examine the quantity of the contacts, their nature and quality, and the relationship between the contacts and the cause of action.[8] *Masada Inv. Corp. v. Allen*, 697 S.W.2d at 334. As part of its evaluation of the reasonableness of exercising jurisdiction, the court "must consider the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief. It must also weigh in its determination 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies[,] and the shared interest of the several States in furthering fundamental substantive social policies.'" *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)).

Federal and state courts now recognize two varieties of personal jurisdiction—specific jurisdiction and general jurisdiction. The United States Supreme Court first distinguished between specific and general jurisdiction in *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). This Court followed suit in 1992 in *J.I. Case Corp. v. Williams*, 832 S.W.2d at 532.

 Specific jurisdiction may be asserted when the plaintiff's cause of action arises from or is related to the nonresident defendant's activities in or contacts with the forum state.[9] To invoke specific jurisdiction, a plaintiff must show (1) that the nonresident defendant has purposely established significant contact with the forum state and (2) that the plaintiff's cause of action arises out of or is related to these activities or contacts. *Burger King Corp. v. Rudzewicz*, 471 U.S. at 472, 105 S.Ct. 2174. The nonresident defendant's contacts with the forum state must be sufficient to enable a court to conclude that the defendant "should reasonably anticipate being haled into court [in the forum state]." *Lindsey v. Trinity Commc'ns, Inc.*, 275 S.W.3d 411, 418 (Tenn.2009) (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. at 297, 100 S.Ct. 559). If the plaintiff can make that showing, the defendant will have the burden of showing that the exercise of specific jurisdiction would be unfair. *Burger King Corp. v. Rudzewicz*, 471 U.S. at 477, 105 S.Ct. 2174; 16 *Moore's Federal Practice* §§ 108.42[1], at 108–54, 108.42[6], at 108–77.

 In contrast to specific jurisdiction, general jurisdiction may be asserted when the plaintiff's cause of action does not arise out of and is not related to the nonresident defendant's activities in the forum state. The threshold for satisfying the requirements for general jurisdiction is substantially higher than the requirements for establishing specific jurisdiction. 4 Charles Alan Wright & Arthur R. Miller

---

**8.** The *Masada* court noted that "[t]wo lesser factors" are the interest of the forum state and convenience. *Masada Inv. Corp. v. Allen*, 697 S.W.2d at 334. These "factors" are part of the inquiry into whether the exercise of jurisdiction comports with traditional notions of fair play and substantial justice.

**9.** *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. at 414 n. 8, 104 S.Ct. 1868. 16 *Moore's Federal Practice* § 108.42[1], at 108–53; 4 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1067.5, at 507 (3d ed. 2002) (hereinafter "4 *Federal Practice and Procedure* ").

*Federal Practice and Procedure* § 1067.5, at 517.[10] An assertion of general jurisdiction must be predicated on substantial forum-related activity on the part of the defendant. The nonresident defendant's contacts with the forum state must be sufficiently continuous and systematic to justify asserting jurisdiction over the defendant based on activities that did not occur in the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. at 416, 104 S.Ct. 1868; *Perkins v. Benguet Consol. Mining Co.,* 342 U.S. at 448, 72 S.Ct. 413; *Lindsey v. Trinity Commc'ns, Inc.,* 275 S.W.3d at 417; *see also* 4 *Federal Practice and Procedure* § 1067.5, at 507.

The general jurisdiction inquiry is very different from the specific jurisdiction inquiry. The United States Court of Appeals for the Fifth Circuit has pointed out that "[u]nlike the specific jurisdiction analysis, which focuses on the cause of action, the defendant and the forum, a general jurisdiction inquiry is dispute blind, the sole focus being on whether there are continuous and systematic contact between the defendant and the forum." *Dickson Marine, Inc. v. Panalpina, Inc.,* 179 F.3d 331, 339 (5th Cir.1999). In order to warrant the exercise of general jurisdiction over a nonresident defendant, "the defendant must be engaged in longstanding business in the forum state, such as marketing or shipping products, or performing services or maintaining one or more offices there; activities that are less extensive than that will not qualify for general in personam jurisdiction." 4 *Federal Practice and Procedure* § 1067.5, at 507.

■ The proper analysis for determining whether a defendant's contacts are "continuous and systematic" enough to warrant an assertion of general jurisdiction requires ascertaining whether "the continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *Lindsey v. Trinity Commc'ns, Inc.,* 275 S.W.3d at 417 (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. at 318, 66 S.Ct. 154).

Questions involving whether a nonresident's contacts with the forum state are sufficient to warrant the exercise of general jurisdiction are extremely fact dependent. 4A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1069.4, at 164, 185 (3d ed. 2002) (hereinafter "4A *Federal Practice and Procedure* "). Determining whether it is appropriate to exercise general jurisdiction entails a careful, non-mechanical evaluation of the facts with particular focus on the nonresident defendant's contacts with the forum state. *Int'l Shoe Co. v. Washington,* 326 U.S. at 319, 66 S.Ct. 154.

■ Lest the distinction between the basis for specific jurisdiction and general jurisdiction be overlooked, we emphasize that the assertion of specific jurisdiction is appropriate only when the plaintiff's cause of action arises from or is related to the defendant's contacts with the forum state. However, general jurisdiction is appropriate when the plaintiff's cause of action does not arise from and is not related to the defendant's contacts with the forum state. Thus, when a plaintiff's cause of action is based on the defendant's activities in or contacts with the forum state, specific jurisdiction, as opposed to general jurisdiction, applies. Therefore, consistent with

---

10. In fact, the United States Supreme Court has upheld an assertion of general jurisdiction only once. *Perkins v. Benguet Consol.* *Mining Co.,* 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952); *see also* 16 *Moore's Federal Practice* § 108.41[3], at 108–49.

the due process requirements of the federal and state constitutions, when a nonresident defendant's contacts with a forum state are substantial, systematic, and continuous, and the exercise of general jurisdiction satisfies the fairness requirement, the cause of action need not arise out of or relate to those contacts.[11]

## V.

Ms. Gordon conceded at oral argument that her claim against Greenview does not arise out of and is not related to Greenview's contacts with Tennessee. Therefore, specific jurisdiction is not at issue in this case.[12] If Tennessee's courts are to exercise personal jurisdiction over Greenview, it must be premised on general jurisdiction and on Greenview's continuous and systematic contacts with Tennessee.

Ms. Gordon asserts that the exercise of general jurisdiction over Greenview is justified based on (1) the fact that Greenview's officers and directors maintain offices in Nashville, (2) the fact that Greenview's annual reports filed with Kentucky's Secretary of State lists its principal office address as "% HCA Legal Dept, P.O. Box 750, Nashville, TN," and (3) the fact that two of Greenview's parent companies are located in Tennes-

see. We conclude that these facts, taken alone or together, do not embody the kind of systematic and continuous contacts which would allow Tennessee to exercise personal jurisdiction over Greenview.

## A.

Ms. Gordon does not dispute the assertion of Greenview Regional Hospital's chief operating officer that the hospital "conducts its hospital business exclusively from the facility located at the Ashley Circle address in Bowling Green." However, she seeks to establish the continuous and systematic contact required for Tennessee's courts to exercise general personal jurisdiction over Greenview by pointing to the fact that the corporation's officers and directors have offices in Tennessee. She relies on the physical location of these offices alone because she has neither alleged nor proved what role the officers and directors play in the day-to-day management and operation of the hospital.

 Ms. Gordon's lawyer has pointed to no case holding that corporate officers or directors maintaining an office or a residence in the forum state is sufficient to establish general jurisdiction over

---

**11.** In three prior decisions, Tennessee courts have predicated the exercise of general jurisdiction on a showing that the defendant's contacts with the forum state gave rise to the plaintiff's cause of action. *See J.I. Case Corp. v. Williams,* 832 S.W.2d at 532 (stating that "[f]or a court to exercise general *in personam* jurisdiction ... the proof must show that the defendant maintains 'continuous and systematic' contacts with the forum state and those contacts 'give rise to the liabilities sued upon'") (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. at 317, 66 S.Ct. 154); *Gordon v. Greenview Hosp., Inc.,* 2008 WL 802463, at *3; *Lucite Int'l, Inc. v. Runciman,* 2005 WL 394775, at *4. These decisions are overruled to the extent that they are inconsistent with our holding in this case that general jurisdic-

tion may be asserted when the plaintiff's cause of action does not arise from and is not related to the nonresident defendant's contacts with the forum state.

**12.** Another plaintiff might have been able to make a plausible claim for exercising specific personal jurisdiction over Greenview had he or she demonstrated that Greenview purposely directed its activities toward Tennessee residents and that the subject matter of the litigation related to those activities. *See Burger King v. Rudzewicz,* 471 U.S. at 472–73, 105 S.Ct. 2174; *Masada Inv. Corp. v. Allen,* 697 S.W.2d at 334. This avenue was closed to Ms. Gordon in this case because she is a resident of Kentucky.

the corporation. And with good reason. A corporation is a distinct legal entity that exists separately from its shareholders, officers, and directors. *Oceanics Sch., Inc. v. Barbour,* 112 S.W.3d 135, 140 (Tenn.Ct. App.2003) (citing *Schlater v. Haynie,* 833 S.W.2d 919, 925 (Tenn.Ct.App.1991) ); *see also Pamperin v. Streamline Mfg., Inc.,* 276 S.W.3d 428, 437 (Tenn.Ct.App.2008). In this age of electronic communications, telecommuting, and distributed management, the fact that Greenview's officers and directors maintain offices in Tennessee does not, by itself, lead to the conclusion that the corporation has continuous and systematic contact with Tennessee or that the corporation is conducting business within the state. Ms. Gordon failed to demonstrate the extent to which Greenview's officers and directors were conducting the corporation's day-to-day business operations from their offices in Tennessee. Therefore, their mere presence in Tennessee cannot automatically be attributed to Greenview.

### B.

■ Tenn.Code Ann. § 20–2–222(a) permits Tennessee's courts to exercise jurisdiction over corporations that maintain their "principal place of business" in Tennessee. Greenview asserts that its principal place of business is in Bowling Green, Kentucky. While there is no dispute that Greenview Regional Hospital is physically located in Bowling Green and that Greenview has no facilities and provides no care in Tennessee, Ms. Gordon insists that Greenview's principal place of business is in Tennessee simply because Greenview listed the Nashville address of HCA's Legal Department as its principal address on its annual corporate filings with Kentucky's Secretary of State. Ms. Gordon's argument exalts form over substance.

■ To justify the assertion of direct jurisdiction by Tennessee courts, the plaintiff must demonstrate that the defendant's contacts with Tennessee are continuous, systematic, and substantial. *Lindsey v. Trinity Commc'ns, Inc.,* 275 S.W.3d at 417. The act of filing corporate papers with Kentucky's Secretary of State in Frankfort, Kentucky establishes no connection with Tennessee. If anything, the act of filing the corporate papers in Kentucky buttresses Greenview's claim that it is a Kentucky corporation doing business in Kentucky.

However, Ms. Gordon's claim is not based on the filing of the corporate papers but rather on the fact that Greenview listed the Nashville address of HCA's Legal Department as its principal office in these papers. Ms. Gordon's complaint does not allege, and the record does not otherwise contain, specific facts regarding the nature of the relationship between Greenview and HCA's legal office in Nashville. All that is known is that Greenview is a subsidiary of TriStar which is, in turn, a subsidiary of HCA. Based on these corporate relationships, it is reasonable to infer that Greenview listed the HCA Legal Department as its principal office solely to assure that all legal notices relating to its corporate status and affairs would be received by the lawyers of its parent corporation.

■ Exercising general jurisdiction over a nonresident corporation requires the existence of continuous corporate operations that are so substantial that they justify asserting jurisdiction over a cause of action based on activities of the corporation that are entirely distinct from its corporate operations. *Lindsey v. Trinity Commc'ns, Inc.,* 275 S.W.3d at 417 (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. at 318, 66 S.Ct. 154). A subsidiary corporation's listing the address of its parent corporation's legal department as its prin-

cipal address on corporate regulatory filings does not amount to the sort of continuous and systematic contacts that provide the basis for asserting general jurisdiction over a nonresident defendant.

## C.

■ Ms. Gordon also asserts that Tennessee's courts may exercise jurisdiction over her cause of action against Greenview because Greenview is a subsidiary of two Tennessee corporations, both of which are subject to general jurisdiction in Tennessee.[13] Ms. Gordon's complaint contains no allegations regarding the corporate relationship between Greenview, TriStar, and HCA, and the record contains no evidence regarding the nature or extent of the role that either TriStar or HCA plays in the day-to-day operation and management of the Greenview Regional Hospital. In the absence of allegations or evidence, this record provides no basis justifying the assertion of general jurisdiction over Greenview because of its relationship with TriStar and HCA.

■ Parent and subsidiary corporations are presumed to be separate and distinct legal entities. *Lowe v. Gulf Coast Dev., Inc.,* No. 01A01–9010–CH–00374, 1991 WL 220576, at *3 (Tenn.Ct.App. Nov.1, 1991) (No Tenn. R.App. P. 11 application filed); 1 William Meade Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations* § 26 (perm.ed., rev.vol.1999). Thus, jurisdiction over a parent corporation does not automatically establish jurisdiction over a subsidiary corporation. *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 781 n. 13, 104 S.Ct. 1473, 79 L.Ed.2d

790 (1984). Likewise, jurisdiction over a subsidiary corporation does not automatically establish jurisdiction over a parent corporation. *Consol. Dev. Corp. v. Sherritt, Inc.,* 216 F.3d 1286, 1293 (11th Cir. 2000). Each corporation's contacts with the forum state must be assessed individually. *See Rush v. Savchuk,* 444 U.S. 320, 332, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980) ("The requirements of *International Shoe* ... must be met as to each defendant over whom a state court exercises jurisdiction.").

■ The courts are reluctant to disregard the separate existence of related corporations and thus have consistently given substantial weight to the presumption of corporate separateness. So long as the parent and the subsidiary corporations maintain their status as separate and distinct corporate entities, the presence of one corporation in the forum state cannot be attributed to the other. *Consol. Dev. Corp. v. Sherritt, Inc.,* 216 F.3d at 1293. Thus, when a parent corporation's involvement with a subsidiary is consistent with the parent's investor status, *United States v. Bestfoods,* 524 U.S. 51, 72, 118 S.Ct. 1876, 141 L.Ed.2d 43 (1998), jurisdiction over one does not automatically confer jurisdiction over the other. 16 *Moore's Federal Practice* § 108.42[3][b][iv], at 108–74.1 to 74.1(1); 4A *Federal Practice and Procedure* § 1069.4, at 163.

■ A parent corporation's general involvement with the subsidiary corporation's performance, finance and budget decisions, and general policies and procedures does not provide a basis for attributing one corporation's contacts with the

---

13. While the record contains evidence that TriStar's principal place of business is in Nashville, it contains no evidence regarding HCA's place of incorporation or the location of its principal offices. Greenview appears to concede in its brief that HCA is based in Tennessee. Because we have determined that the current record does not provide a basis for permitting Tennessee's courts to exercise jurisdiction over Greenview based on the location of its parent corporations, the absence of this evidence is not outcome-determinative.

forum to the other for the purposes of personal jurisdiction. *Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir.2001) (citing *United States v. Bestfoods*, 524 U.S. at 72, 118 S.Ct. 1876). Neither does the fact that the subsidiary is wholly owned by the parent corporation or the fact that the corporations have the same directors and officers suffice to show that the two are alter egos. *See United States v. Bestfoods*, 524 U.S. at 69–70, 118 S.Ct. 1876; *Adams v. Republic Steel Corp.*, 621 F.Supp. 370, 375 (W.D.Tenn.1985).

However, the actions of a parent corporation may be attributable to a subsidiary corporation (1) when one corporation is acting as an agent for the other or (2) when the two corporations are essentially alter egos of each other.[14] *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1134 (9th Cir.2003); 1 Robert C. Casad & William M. Richman, *Jurisdiction in Civil Actions* § 4–3[5] (3d ed.2004). An alter ego or agency relationship is typified by the parent corporation's control of the subsidiary corporation's internal affairs or daily operations. *Doe v. Unocal Corp.*, 248 F.3d at 926. The courts have declined to disregard the presumption of corporate separateness in the absence of evidence of the parent corporation's domination of the day-to-day business decisions of the subsidiary corporation.[15] *See Quarles v. Fuqua Indus., Inc.*, 504 F.2d 1358, 1364 (10th

---

**14.** Some courts use the analogous concepts of merger or attribution to assert jurisdiction over corporate affiliates. *See, e.g., Third Nat'l Bank in Nashville v. WEDGE Group Inc.*, 882 F.2d 1087, 1094 (6th Cir.1989) (Keith, J., concurring); *In re Telectronics Pacing Sys., Inc.*, 953 F.Supp. 909, 918–19 (S.D.Ohio 1997) (noting that reliance on separate corporate formalities does not fit in with the fairness inquiry of *International Shoe* and articulating a test based on merger (a "sufficiently substantial relationship to justify the court's jurisdiction[,] such as ownership, control and integrated management") and attribution (where the subsidiary acts on behalf of the parent) as the standard for exercising jurisdiction); Lea Brilmayer & Kathleen Paisley, *Personal Jurisdiction and Substantive Legal Relations: Corporations, Conspiracies, and Agency*, 74 Cal. L.Rev. 1, 2 (1986) (finding that jurisdiction over a parent may extend to a subsidiary under the theories of attribution, merger, and substitution). Courts have also determined a parent's liability for its subsidiary's actions by examining the facts of the case and then applying one of four tests, depending on which best fits the circumstances: (1) the agency test, (2) the alter ego test, (3) the instrumentality test, and (4) the enterprise test. *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1362 & n. 2 (10th Cir.1993). "All four tests are ultimately concerned with resolving the same question: whether the parent corporation 'so dominated the [subsidiary] corporation as to negate its separate personality.'" *Material Supply Int'l, Inc. v. Sunmatch Indus. Co.*, 62 F.Supp.2d 13, 20 (D.D.C.1999) (alteration in original) (quoting *Hart v. Dep't of Agric.*, 112 F.3d 1228, 1231 (D.C.Cir.1997)). *Compare Third Nat'l Bank in Nashville v. WEDGE Group Inc.*, 882 F.2d at 1090 n. 1 (noting that "[t]his court has held that the ownership of a subsidiary that conducts business in the forum is 'one contact or factor to be considered in assessing the existence or non-existence of the requisite minimum contacts.'" (quoting *Velandra v. Regie Nationale des Usines Renault*, 336 F.2d 292, 297 (6th Cir.1964))).

**15.** The United States Supreme Court has held that a subsidiary's presence could not be attributed to the parent because the formalities of separation were observed and "[t]he corporate separation, though perhaps merely formal, was real. It was not pure fiction." *Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333, 337, 45 S.Ct. 250, 69 L.Ed. 634 (1925). *See also Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d at 1294 (requiring the plaintiff to show that the "corporate existence was simply a formality, and that [the subsidiary] was merely [the parent's] agent"). The approach in *Cannon* has been criticized as overly formalistic. *See, e.g., Energy Reserves Group, Inc. v. Superior Oil Co.*, 460 F.Supp. 483, 490 (D.Kan.1978) (finding *Cannon* to be "limited in scope or modified in holding by *International Shoe* and its progeny"); Brilmayer & Paisley, 74 Cal. L.Rev. at 28–30.

Cir.1974); *Craig v. Lake Asbestos of Quebec, Ltd.*, 843 F.2d 145, 152 (3d Cir.1988); 4A *Federal Practice and Procedure* § 1069.4, at 163.

Determining whether one corporation is an alter ego of another for jurisdictional purposes is controlled by state law. *Jemez Agency, Inc. v. CIGNA Corp.*, 866 F.Supp. 1340, 1343 (D.N.M. 1994). In Tennessee, mere control of a subsidiary corporation by its parent is not sufficient to disregard the presumption of corporate separateness (to "pierce the corporate veil"). *Cambio Health Solutions, LLC v. Reardon*, 213 S.W.3d 785, 790 (Tenn.2006); *Cont'l Bankers Life Ins. Co. of the S. v. Bank of Alamo*, 578 S.W.2d 625, 631 (Tenn.1979). To disregard the presumption, the party seeking to do so must demonstrate (1) that the subsidiary corporation is a sham or dummy, *Elec. Power Bd. of Chattanooga v. St. Joseph Valley Structural Steel Corp.*, 691 S.W.2d 522, 526 (Tenn.1985), (2) that the two corporations are, in fact, identical and indistinguishable, *Mfrs. Consolidation Serv., Inc. v. Rodell*, 42 S.W.3d at 866, or (3) that the subsidiary corporation is merely an instrumentality, agent, conduit, or adjunct of the parent corporation, *Stigall v. Wickes Mach.*, 801 S.W.2d 507, 511 (Tenn. 1990). In sum, the presumption of corporate separateness may be overcome by demonstrating that the parent corporation "exercises complete dominion over its subsidiary, not only of finances, but of policy and business practice in respect to the transaction under attack, so that the corporate entity, as to that transaction, had no separate mind, will or existence of its own." *Cont'l Bankers Life Ins. Co. of the S.*, 578 S.W.2d at 632.

As an alternative to asserting jurisdiction over a subsidiary corporation on the alter ego theory, jurisdiction may exist over a subsidiary corporation based on the actions of the parent corporation when there is an agency relationship between the two. The burden of proof rests with the party asserting the agency relationship. *Jack Daniel Distillery, Lem Motlow, Prop. v. Jackson*, 740 S.W.2d 413, 416 (Tenn.1987). The concept of agency, in its broadest sense, includes every relation in which one person or entity acts for or represents another. *White v. Revco Disc. Drug Ctrs., Inc.*, 33 S.W.3d 713, 723 (Tenn.2000) (quoting *Kerney v. Aetna Cas. & Sur. Co.*, 648 S.W.2d 247, 252 (Tenn.Ct. App.1982)). An agency relationship does not require an explicit agreement. *Warren v. Estate of Kirk*, 954 S.W.2d 722, 725 (Tenn.1997). The analysis hinges on the right to control the agent's actions, *Jack Daniel Distillery, Lem Motlow, Prop. v. Jackson*, 740 S.W.2d at 416, and, ultimately, the fact of actual control over the agent. *White v. Revco Disc. Drug Ctrs., Inc.*, 33 S.W.3d at 723.

Ms. Gordon's assertion that Tennessee's courts may exercise personal jurisdiction over Greenview rests solely on Greenview's status as a subsidiary of TriStar and as a remote subsidiary of HCA and on Greenview's response to her request for admissions that "HCA was the owner and operator of Greenview Hospital, Inc. in April, 2005." Ms. Gordon neither alleged in her complaint nor presented evidence regarding the extent to which either TriStar or HCA exercised control over the day-to-day operation of Greenview Regional Hospital or regarding the extent to which Greenview was acting as an agent of either TriStar or HCA.

To justify the exercise of personal jurisdiction over Greenview, Ms. Gordon must show more than the fact that the parent corporations control Greenview. *Cambio Health Solutions, LLC v. Reardon*, 213 S.W.3d at 790. The facts in the record simply do not demonstrate the kind of

"complete control," *Cambio Health Solutions, LLC v. Reardon,* 213 S.W.3d at 790, which renders the subsidiary nothing more than an instrumentality, agency, conduit, or adjunct of the parent corporation. *Stigall v. Wickes Mach.,* 801 S.W.2d at 511. We do not find adequate factual support in the record to justify disregarding the presumption of corporate separateness and to impute TriStar's or HCA's activities to Greenview for jurisdictional purposes. Likewise, in the absence of any evidence of the parent corporations' right to or exercise of control over Greenview, there is no basis to support the conclusion that an agency relationship existed between HCA or TriStar and Greenview.

### D.

 Finally, Ms. Gordon asserts that Tennessee's courts should exercise personal jurisdiction over Greenview because doing so (1) would not be burdensome or inconvenient to Greenview and (2) would result in Greenview being tried in the same proceeding with the other defendants, thereby furthering Tennessee's policy favoring the joinder of all tortfeasors in a single trial.[16] The United States Supreme Court has stated that considerations of fairness may "sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required." *Burger King Corp. v. Rudzewicz,* 471 U.S. at 477, 105 S.Ct. 2174. However, this inquiry is to be undertaken only "[o]nce it has been decided that a defendant purposefully established minimum contacts within the forum State." *Burger King Corp. v. Rudzewicz,* 471 U.S. at 476, 105 S.Ct. 2174. In this case, a showing of sufficient minimum contacts to warrant the exercise of personal jurisdiction is lacking. Accordingly, the exercise of personal juris-

diction over Greenview would not comport with due process.

### VI.

This record does not demonstrate either that Greenview has the kind of continuous and systematic contacts with Tennessee that permit Tennessee's courts to exercise general jurisdiction over Greenview in this case or that the control that TriStar and HCA exercise over Greenview is so extensive to warrant disregarding the presumption of corporate separateness. Accordingly, we affirm the judgments of the trial court and the Court of Appeals dismissing Ms. Gordon's complaint against Greenview for lack of personal jurisdiction. We remand the case to the trial court for further proceedings consistent with this opinion, and we tax the costs of this appeal to Tosha Gordon and her surety for which execution, if necessary, may issue.

---

16. *Samuelson v. McMurtry,* 962 S.W.2d 473, 476 (Tenn.1998).