# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### October 2, 2012 Session

## COVISTA COMMUNICATIONS, INC. v. OORAH, INC. d/b/a CUCUMBER COMMUNICATIONS, INC.

**Appeal from the Chancery Court for Hamilton County**
**No. 11-0635     W. Frank Brown, III, Chancellor**

_____

**No. E2012-00720-COA-R3-CV-FILED-NOVEMBER 14, 2012**

_____

This appeal involves in personam jurisdiction over an out-of-state defendant. The chancery court granted the defendant's motion to dismiss for lack of personal jurisdiction pursuant to Rule 12.02(2) of the Tennessee Rules of Civil Procedure. The court found that the defendant had not purposely availed itself of the privilege of doing business in Tennessee and did not have sufficient contacts with Tennessee to be subjected to jurisdiction in this state. The plaintiff, a corporation that claims its principal place of business is in Tennessee, appeals. We find that the circumstances do not support the exercise of personal jurisdiction over the defendant foreign corporation by a Tennessee court. Accordingly, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and D. MICHAEL SWINEY, J., joined.

William H. Horton, Chattanooga, Tennessee, for the appellant, Covista Communications, Inc.

Sam D. Elliott, Chattanooga, Tennessee, and Steven G. Storch and Matthew D. Kane, New York, New York, for the appellee, Oorah, Inc. d/b/a Cucumber Communications, Inc.

## OPINION

## I. BACKGROUND

Capsule Communications, Inc. ("Capsule") and the defendant, Oorah, Inc., d/b/a Cucumber Communications, Inc. ("Oorah"), negotiated and executed an agreement dated

November 1, 2001 ("the Reseller Agreement"), in which Capsule, a Delaware corporation with its principal place of business in Pennsylvania, agreed to deliver telecommunications services for customers provided by Oorah. Oorah, a corporation organized under the laws of New Jersey with its principal place of business in that state, is a non-profit organization that serves the New York tri-state Jewish community and fund-raises in part by marketing telecommunications services to members of the orthodox Jewish community in the New York area.

According to Oorah, the Reseller Agreement relates that Oorah was to receive monthly commissions from Capsule based upon the usage charges paid by the Oorah-provided customers purchasing Capsule's telecommunications services.[1] Further, Oorah observed that the Reseller Agreement provides "the rights and obligations of the parties hereunder and thereunder shall be construed in accordance with and be governed by the laws of the Commonwealth of Pennsylvania" and "any legal action or proceeding . . . may be brought in the state courts or the courts of the United States of America located in Philadelphia, Pennsylvania . . . ." The original agreement refers to the jurisdiction of such courts as "non-exclusive."

In February 2002, the plaintiff, Covista Communications, Inc. ("Covista"), acquired Capsule. Per the Reseller Agreement, the Oorah contract was assigned to Covista.[2] Subsequently, Covista began providing the telecommunications services to the customers obtained by Oorah.

According to Covista, around the time it acquired Capsule, it relocated its principal place of business from New Jersey to Chattanooga, Tennessee. Two years later, on June 2004, Oorah and Covista executed another contract, an Independent Authorized Master Agent Agreement ("the Agent Agreement").[3] Although this second agreement was executed

_____

[1]Oorah was authorized to resell the services provided by Capsule (later Covista). The Reseller Agreement provides as follows:

> Throughout the term of the agreement, Reseller's revenue commitment will be eighty (80) percent of the previous month's billing with a minimum qualifying usage commitment of $150,000 upon a six-month ramp. If after the six-month ramp, Reseller's net charges (after any applicable discounts hereunder) for the services are less than the minimum commitment, Reseller shall pay [Covista] the shortfall. . . .

[2]The Reseller Agreement contains a clause that gave Capsule an unqualified right to assign its rights under the agreement without Oorah's consent.

[3]Covista claimed the Agent Agreement did not supersede the Reseller Agreement. Oorah contended
(continued...)

-2-

when Covista's principal office purportedly was located in Tennessee, it identifies Covista as "a corporation incorporated under the laws of the State of Delaware, having a principal office at 3331 Street Road, Bensalem, PA 19020." The Agent Agreement specifically provides that Pennsylvania law shall apply to its interpretation and contains a forum selection clause conferring exclusive jurisdiction with the courts of Pennsylvania ("the Courts of Philadelphia or Norristown, PA, for a State claim, and Philadelphia, PA, for a Federal claim.").

In approximately May 2009, Oorah discovered that Covista had ceased paying the monthly commissions. Covista filed this action for breach of contract on August 17, 2011, alleging that Oorah failed to meet certain revenue commitments to Covista and was obligated to pay "shortfalls." Covista also sought a declaratory judgment regarding the amount of any set off that may be owed to Oorah. Covista asserted that Oorah's business transactions in Tennessee made it subject to the jurisdiction of a Tennessee court. Covista contended that although the Agent Agreement contained a mandatory forum selection clause selecting certain Pennsylvania courts, it applied only with respect to legal actions "arising directly or indirectly from this Agreement." Covista asserted the claims in this case arose under the Reseller Agreement rather than the Agent Agreement, as the forum selection clause of the Reseller Agreement was not mandatory and the jurisdiction of the courts was "non-exclusive." Thus, according to Covista, the forum selection clause did not apply. Two days later, on August 19, 2011, Oorah commenced its own action in the Supreme Court of New York.

Shortly after this case was initiated, Oorah filed a motion to dismiss for lack of personal jurisdiction, accompanied by the affidavit of Jeffrey Stern, the Chief Executive Officer of Oorah.[4] Oorah took the position that it was not subject to the jurisdiction of the Tennessee courts because it did not have sufficient contacts within this state. Covista filed a response, along with the affidavit of Sandra Forquer, Controller and Vice President of

---

[3](...continued)
that the Agent Agreement did supersede or modify the Reseller Agreement, and that Covista's argument contradicts the Agent Agreement's merger clause.

[4]Rule 12.03 of the Tennessee Rules of Civil Procedure provides that: "[i]f, on a motion [to dismiss], matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rules 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." However, the Tennessee Supreme Court has previously held that this general rule is inapplicable when the motion is one involving jurisdictional issues. *See Nicholstone Book Bindery, Inc. v. Chelsea House Publishers*, 621 S.W.2d 560, 561 n. 1 (Tenn. 1981).

Finance.[5]

A hearing was held on December 13, 2011. The trial court, in a December 30, 2011, decision, dismissed Covista's complaint. The court noted as follows:

First, in both contracts, the contracting parties agreed to make the courts of Pennsylvania the forum for litigation between the parties. Forum selection clauses are generally enforced in Tennessee. . . . Plaintiff has not put forward any arguments why the forum selection clause is invalid and this court, after reviewing the factors and fairness of enforcing the forum selection clause, finds no reason not to enforce the clause. Thus, the case must be dismissed on the basis of the forum selection clause in the parties' agreements.

Second, the court finds that it does not have personal jurisdiction over Oorah in Tennessee. The work that is done in Tennessee is being done by Covista, pursuant to contract. There is no doubt that the court would have personal jurisdiction over Covista. However, the court does not believe Plaintiff has shown how Oorah has purposefully availed itself of the privilege of acting in Tennessee for this court to sufficiently have personal jurisdiction over Oorah.

Plaintiff has attempted to shift the focus away from analyzing Oorah's contacts with Tennessee and instead focuses on Plaintiff's own contacts with Tennessee. This court certainly does not have general jurisdiction over Oorah, and to the extent it is alleged this court has specific jurisdiction because Defendant communicated with Plaintiff by phone and email, this court rejects that argument. The court does not believe any communications by Oorah about contractual issues would be sufficient to assert personal jurisdiction over Oorah. The nature and extent of these communications were not detailed by Ms. Forquer[;] rather they were merely generalized, nonspecific allegations. The mere act of communicating via phone and/or email with a resident of a forum is not enough to subject a foreign defendant to jurisdiction within the forum. *See Kerry Steel, Inc. v. Paragon Industries, Inc.*, 106 F.3d 147, 151 (6th Cir. 1997). These are the types of generalized contacts that do not by

---

[5]"[I]f a defendant supports its motion [to dismiss] with affidavits, the plaintiff must establish its prima facie showing of personal jurisdiction over the defendant by filing its own affidavits or other written evidence." *Gordon v. Greenview Hosp., Inc.*, 300 S.W.3d 635, 644 (Tenn. 2009) (citing *Chenault v. Walker*, 36 S.W.3d 45, 56 (Tenn. 2001); *Mfrs. Consol. Serv., Inc. v. Rodell*, 42 S.W.3d 846, 854-55 (Tenn. Ct. App. 2000)). A failure to establish a prima facie showing with affidavits or other materials is fatal to a plaintiff's claim.

themselves create a claim of jurisdiction. *See LAK, Inc. v. Deer Creek Enters.*, 885 F.2d 1293, 1300-1301 (6th Cir. 1989) (stating "[t]he telephone calls and letters on which the plaintiff's claim of jurisdiction primarily depends strike us as precisely the sort of 'random,' 'fortuitous' and 'attenuated' contacts that the *Burger King* Court rejected as a basis for haling non-resident defendants into foreign jurisdictions"). The other actions Ms. Forquer specified are acts of Covista in carrying out its contractual obligations to Oorah.

The existence of a contract between a foreign defendant and resident plaintiff alone does not itself confer jurisdiction to the plaintiff's home forum. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985). If Covista could change its location and thereby make a contracting party with it subject to the jurisdiction of the new state, because it communicated with Covista about contractual matters, then this entire area of law would be turned upside down. In effect, this scenario happened here because Covista acquired Capsule and assumed the contract with Oorah. Sometime later, Covista changed its principal place of business from New Jersey to Tennessee. Covista changed. Oorah did not change its location or business. It would not be "fair and substantially just" to make Oorah litigate this case in Tennessee.

\* \* \*

In its motion to alter or amend, Covista argued that it has never had any connection to Pennsylvania, and that the language in the Agent Agreement as to its principal office location was erroneous. The trial court declined to revise its ruling. Covista filed a timely appeal.

## II.  ISSUES

We restate the issues raised by Covista as follows:

1.  Whether the trial court erred in concluding that Oorah lacked sufficient contacts with Tennessee through its ongoing business relationship with a corporation located in Tennessee to establish personal jurisdiction.

2.  Whether the forum selection clauses in the parties' contracts precluded filing of suit in Tennessee where Covista's claims did not involve the contract containing the mandatory forum selection clause, neither party had a connection to the forum selected, and Oorah did not file its separate suit in that

forum.

## III. STANDARD OF REVIEW

A trial court's decision to grant or deny a motion pursuant to Rule 12.02(2) of the Tennessee Rules of Civil Procedure for lack of personal jurisdiction presents a question of law. Accordingly, we review the trial court's decision de novo, with no presumption of correctness, for the purpose of determining whether the plaintiff established a prima facie showing of personal jurisdiction over the defendant. *JRM Invs., Inc. v. National Standard, LLC*, No. W2011-01143-COA-R3-CV, 2012 WL 1956421, at *2 (May 31, 2012). The plaintiff need only demonstrate personal jurisdiction by a preponderance of the evidence. *Gordon v. Greenview Hosp., Inc.*, 300 S.W.3d 635, 644 (Tenn. 2009) (citations omitted). In reviewing a trial court's decision to grant a motion to dismiss for lack of personal jurisdiction, we must take the plaintiff's allegations of fact as true. Tenn. R. App. P. 13(d); *Bell v. Icard, Merrill, Cullis, Timm, Furen and Ginsburg, P.A.*, 986 S.W.2d 550, 554 (Tenn. 1999).

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72, 185 S.Ct. 2174, 85 L.Ed 2d 528 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). Personal jurisdiction over a nonresident defendant can only be exercised if that defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)). This two-part test requires evaluating whether the requisite minimum contacts are present and whether the exercise of jurisdiction is fair. *Burger King*, 471 U.S. at 476; *Davis Kidd Booksellers, Inc. v. Day-Impex, Ltd.*, 832 S.W.2d 572, 575 (Tenn. Ct. App. 1992).

In Tennessee, personal jurisdiction over non-residents is governed by the state's so-called "long-arm statutes." *See* Tenn. Code Ann. §§ 20-2-214, 20-2-223, and 20-2-225. Section 20-2-214 reads as follows:

> **Jurisdiction of persons unavailable to personal service in state – Classes of actions to which applicable.** – (a) Persons who are nonresidents of this state and residents of this state who are outside the state and cannot be personally served with process within this state are subject to the jurisdiction of the courts of this state as to any action or claim for relief arising from:

(1) The transaction of any business within this state;

(2) Any tortious act or omission within this state;

(3) The ownership or possession of any interest in property located within this state;

(4) Entering into any contract of insurance, indemnity or guaranty covering any person, property or risk located within this state at the time of contracting;

(5) Entering into a contract for services to be rendered or for materials to be furnished in this state;

(6) Any basis not inconsistent with the constitution of this state or of the United States;

(7) Any action of divorce, annulment or separate maintenance where the parties lived in the marital relationship within this state, notwithstanding one party's subsequent departure from this state, as to all obligations arising for alimony, custody, child support or marital dissolution agreement, if the other party to the marital relations continues to reside in this state.

(b) As used in this section, "person" includes corporations and all other entities that would be subject to service of process if present in this state.

(c) Any such person shall be deemed to have submitted to the jurisdiction of this state who acts in the manner described in subsection (a) through an agent or personal representative.

Section 20-2-223 provides as follows:

**Personal jurisdiction based on conduct.** – (a) A court may exercise personal jurisdiction over a person, who acts directly or indirectly, as to a claim for relief arising from the person's:

(1) Transacting any business in this state;

(2) Contracting to supply services or things in this state;

(3) Causing tortious injury by an act or omission in this state;

(4) Causing tortious injury in this state by an act or omission outside this state of the person who regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or derives substantial revenue from goods use or consumed or services rendered, in this state;

(5) Having an interest in, using or possessing real property in this state;

(6) Contracting to insure any person, property or risk located within this state at the time of contracting; or

(7) Conduct as a director or officer of a domestic corporation or the conduct of a domestic corporation while the person held office as a director or officer.

(b) When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against that person.

Section 20-2-225 states:

**Other bases of jurisdiction unaffected – Jurisdiction whenever permitted by constitution. –** A court of this state may exercise jurisdiction:

(1) On any other basis authorized by law; or

(2) On any basis not inconsistent with the constitution of this state or of the United States.

Courts recognize two types of personal jurisdiction: specific and general. *Gordon*, 300 S.W.3d at 647. In *Gordon*, the Tennessee Supreme Court explained as follows:

Specific jurisdiction may be asserted when the plaintiff's cause of action arises from, or is related to, the nonresident defendant's activities in or contacts with the forum state. To invoke specific jurisdiction, a plaintiff must show (1) that the nonresident defendant has purposely established significant contact with the forum state and (2) that the plaintiff's cause of action arises out of or is related to these activities or contacts. The nonresident defendant's contacts with the forum state must be sufficient to enable a court to conclude that the defendant "should reasonably anticipate being haled into court [in the forum state]." If the plaintiff can make that showing, the defendant will have the burden of showing that the exercise of specific jurisdiction would be unfair.

In contrast to specific jurisdiction, general jurisdiction may be asserted when the plaintiff's cause of action does not arise out of and is not related to the nonresident defendant's activities in the forum state. The threshold for satisfying the requirements for general jurisdiction is substantially higher than

the requirements for establishing specific jurisdiction. An assertion of general jurisdiction must be predicated on substantial forum-related activity on the part of the defendant. The nonresident defendant's contacts with the forum state must be sufficiently continuous and systematic to justify asserting jurisdiction over the defendant based on activities that did not occur in the forum state.

The general jurisdiction inquiry is very different from the specific jurisdiction inquiry. The United States Court of Appeals for the Fifth Circuit has pointed out that "[u]nlike the specific jurisdiction analysis, which focuses on the cause of action, the defendant and the forum, a general jurisdiction inquiry is dispute blind, the sole focus being on whether there are continuous and systematic contacts between the defendant and the forum." In order to warrant the exercise of general jurisdiction over a nonresident defendant, "the defendant must be engaged in longstanding business in the forum state, such as marketing or shipping products, or performing services or maintaining one or more offices there; activities that are less extensive than that will not qualify for general in personam jurisdiction."

The proper analysis for determining whether a defendant's contacts are "continuous and systematic" enough to warrant an assertion of general jurisdiction requires ascertaining whether "the continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities."

Questions involving whether a nonresident's contacts with the forum state are sufficient to warrant the exercise of general jurisdiction are extremely fact dependent. Determining whether it is appropriate to exercise general jurisdiction entails a careful, non-mechanical evaluation of the facts with particular focus on the nonresident defendant's contacts with the forum state.

Lest the distinction between the basis for specific jurisdiction and general jurisdiction be overlooked, we emphasize that the assertion of specific jurisdiction is appropriate only when the plaintiff's cause of action arises from or is related to the defendant's contacts with the forum state. However, general jurisdiction is appropriate when the plaintiff's cause of action does not arise from and is not related to the defendant's contacts with the forum state. Thus, when a plaintiff's cause of action is based on the defendant's activities in or contacts with the forum state, specific jurisdiction, as opposed to general jurisdiction, applies. Therefore, consistent with the due process requirements

of the federal and state constitutions, when a nonresident defendant's contacts with a forum state are substantial, systematic, and continuous, and the exercise of general jurisdiction satisfies the fairness requirement, the cause of action need not arise out of or relate to those contacts.

*Id.* at 647-49 (internal citations omitted).

Oorah asserts that it does not conduct business within the State of Tennessee. Oorah notes that it does not maintain an office in Tennessee, has no employees and has engaged no independent contractors who work or reside in Tennessee, maintains no bank accounts and owns no real estate within Tennessee, does not specifically direct any solicitation for donations to Tennessee, and none of its charitable activities are specifically directed to Tennessee or its residents.

Covista argues that Oorah received the benefit of its services under the contract provided in Tennessee, including provisioning, billing, customer service, customer support, and account management. Covista notes the actual telephonic service originated from Tennessee, customer bills were mailed from Tennessee, and the customers sent payments to a lock box at a Tennessee bank. Covista states it processed the customer payments in Tennessee and its payments to Oorah under the Reseller Agreement were drawn on a Tennessee bank and mailed from Tennessee.

The only basis for jurisdiction argued by Covista is the contract pursuant to which it brings this action. The contract at issue was negotiated with Covista's predecessor Capsule, which itself had no connection to Tennessee. Oorah agreed to the jurisdiction of Pennsylvania courts as a condition of entering into the deal with Capsule. The contract was not signed or executed within Tennessee. Capsule was able to assign its interests under the contract to Covista without Oorah's consent. We note that the decision of Covista, itself a foreign corporation, to headquarter its offices in Tennessee, alone cannot subject Oorah to the state's jurisdiction. *See Calphalon Corp. v. Rowlette*, 228 F.3d 718, 722-23 (6th Cir. 2000) ("The defendant was not attempting to 'exploit any market for its products' in the State of Michigan, but rather had contact with the state only because the plaintiff chose to reside there.") (quoting *Int'l Techs. Consultants v. Euroglas*, 107 F.3d 386, 395 (6th Cir. 1997)).

In regard to the contract, the marketing of Covista's telecommunications services to Oorah's customers was not specifically directed to residents of Tennessee. To the contrary, the primary marketing for Oorah's solicitation efforts is the orthodox Jewish community in the New York tri-state area. Oorah has not solicited business from Tennessee residents or provided services to them.

We find that Oorah has no "sufficiently continuous and systematic" contacts with Tennessee. Thus, any finding of personal jurisdiction in this case must be based upon specific, as opposed to general, jurisdiction. The gravamen of our inquiry is whether Oorah's contacts with Tennessee are sufficient to enable our courts to conclude that Oorah "should reasonably anticipate being haled into court [in Tennessee]." *Lindsey v. Trinity Commc'ns, Inc.*, 275 S.W.3d at 418.

To determine whether the circumstances warrant the exercise of specific jurisdiction, Tennessee courts have adopted three primary factors and two lesser factors to be considered in determining whether the necessary "minimum contacts" exist. *Masada Inv. Corp. v. Allen*, 697 S.W.2d 332, 334 (Tenn. 1985). The three primary factors are: (1) the quantity of the contacts, (2) the nature and quality of the contacts, and (3) the source and connection of the cause of action with the contacts. *Id.* at 334. The two lesser factors to be considered are the interest of the forum state and the convenience of the parties.

Under Tennessee's "minimum contacts" test, the cause of action need not arise in the state. *Masada*, 697 S.W.2d at 332. All five factors in *Masada* need not be present in order for courts to exercise jurisdiction. *Walker v. Nationwide Ins. Co.*, 813 S.W.2d 135, 138 (Tenn. Ct. App. 1990). The defendant's contacts with the forum state need not be physical, and the court will primarily examine the quantity of the contacts, their nature and quality, and the relationship between the contacts and the cause of action. *Masada*, 697 S.W.2d at 334.

As part of the evaluation of the reasonableness of exercising jurisdiction, the court "must consider the burden on the defendant, the interests of the forum state, and the plaintiff's interest in obtaining relief. It must also weigh in its determination 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies[,] and the shared interest of the several States in furthering fundamental substantive social policies.'" *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 112, 107 S.Ct. 1026, 94 L.Ed. 2d 92 (1987) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 62 L.Ed. 2d 490 (1980)).

The United States Supreme Court has emphasized that "[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." *Burger King*, 471 U.S. at 474. To the contrary, it is essential in each case that there be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Asahi*, 480 U.S. at 109.

Under the circumstances before us, we cannot find that Oorah directed activities at Tennessee such that it could "reasonably anticipate being haled into court" in Tennessee.

*Gordon v. Greenview Hosp., Inc.*, 300 S.W.3d 635, 647 (Tenn. 2009) (citing *Lindsey v. Trinity Commc'ns, Inc.*, 275 S.W.3d 411, 418 (Tenn. 2009)). Accordingly, we find no error in the trial court's decision to decline to exercise personal jurisdiction over Oorah.

**B.**

Having concluded that personal jurisdiction over Oorah is lacking, we pretermit consideration of Covista's argument regarding the forum selection clauses in the contracts. Even if the forum selection clauses are unenforceable, because Covista has failed to establish personal jurisdiction over Oorah by this state, determining this issue would not change the outcome.

**V. CONCLUSION**

The decision of the trial court is affirmed and the cause remanded. Costs of the appeal are assessed to the appellant, Covista Communications, Inc.

_____
JOHN W. McCLARTY, JUDGE