IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
December 03, 2014 Session

## WALL TRANSPORTATION, LLC, ET AL. V. DAMIRON CORPORATION

**Appeal from the Circuit Court for Robertson County**
**No. 74CC12013CCV443     Ross H. Hicks, Judge**

_____

### No. M2014-00487-COA-R3-CV - Filed December 19, 2014

_____

This appeal involves *in personam* jurisdiction over the Appellee, an Indiana corporation. After finding a truck for sale on Appellee's website, Appellant Carl Wall traveled to Indiana and purchased the truck there. After Mr. Wall brought the truck back to Tennessee, he allegedly discovered that Appellee's agent had made certain misrepresentations about the vehicle's condition. Appellants sued Appellee in Circuit Court in Robertson County, Tennessee. Appellee filed a Tennessee Rule of Civil Procedure 12.02(2) motion to dismiss for lack of personal jurisdiction, which the trial court granted. Discerning no error, we affirm and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed and Remanded**

KENNY ARMSTRONG, J. delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and ARNOLD B. GOLDIN, J., joined.

Fletcher W. Long, Clarksville, Tennessee, for the appellants, Wall Transportation, L.L.C. and Carl Wall.

Robert E. Boston and Mark M. Bell, Nashville, Tennessee, for appellee, Damiron Corporation d/b/a Damiron Truck Sales.

# MEMORANDUM OPINION[1]

## I. Background

Carl Wall is a resident of Robertson County, Tennessee. Mr. Wall is the owner/operator of Wall Transportation, LLC, a Tennessee limited liability company (together with Mr. Wall, "Appellants"). Damiron Corporation d/b/a Damiron Truck Sales ("Damiron," or "Appellee") is an Indiana corporation, with its principal place of business at 6575 Old Highway 27, Fremont, Indiana. Damiron maintains an internet website where it offers heavy-duty trucks for sale.

During the spring of 2013, Mr. Wall found a 2003 Freightliner XL Flat Top truck for sale on Damiron's website. Mr. Wall called Damiron's Indiana location from Tennessee and spoke with an agent of the company concerning purchase of the subject vehicle. According to the complaint, Damiron's agent "described the vehicle to Mr. Wall as being in A-1 condition. . . ." The agent also allegedly indicated that the truck had "approximately 615,000 miles." Thereafter, Mr. Wall traveled to Indiana, where he inspected the truck at Damiron's place of business. Mr. Wall negotiated the purchase price, entered into the sales contract, and took delivery of the truck while in Indiana.

On October 3, 2013, Appellants filed the instant lawsuit against Damiron in the Circuit Court of Robertson County, Tennessee. In the complaint, Appellants alleged that the truck Mr. Wall purchased from Damiron was not as represented. Specifically, Appellants averred that Damiron's agent had made false and fraudulent representations about the truck concerning its mileage, gear ratio, and the condition of the truck's body, which was allegedly rusted. Accordingly, Appellant's sought compensatory and punitive damages, and attorney's fees against Damiron.

On November 12, 2013, Damiron made a special appearance in the trial court for the purpose of filing a Tennessee Rule of Civil Procedure 12.02(2) motion to dismiss Appellants' complaint for lack of personal jurisdiction. In addition to the memorandum in support of its motion to dismiss, Damiron also submitted the affidavit of Dale Waligora, Damiron's

---

[1] Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

> This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

2

owner and president. Mr. Waligora's affidavit stated, in relevant part, that:

> 5. Damiron Corporation does not own any property in the State of Tennessee.
> 6. Damiron Corporation has never been a party to litigation in the State of Tennessee.
> 7. The corporate officers of Damiron Corporation are Dale Waligora and Kimberly Waligora, both residents of the State of Michigan.
> 8. Damiron Corporation has eight (8) employees, none of which [sic] reside nor work in the State of Tennessee.
> 9. Damiron Corporation does not routinely have customers located in the State of Tennessee.
> 10. Damiron Corporation does not routinely make purchases in the State of Tennessee.
> 11. Damiron Corporation does not direct any specific advertising to the State of Tennessee.
> 12. Damiron Corporation does not purchase a substantial volume of materials from Tennessee sellers on a systematic and continuous basis.
> 13. Damiron Corporation, through its employees and agents, does not routinely visit the State of Tennessee to pick up purchases.
> 14. Damiron Corporation does not routinely sell to customers who reside in or [who have] their principal place of business located in the State of Tennessee.
> 15. Damiron Corporation does not routinely purchase tractors from Tennessee sellers.

Although Appellants opposed the motion to dismiss, the trial court granted the motion by order dated February 5, 2014. In its order, the trial court specifically found that:

> 1. Damiron is an Indiana corporation that does not routinely do business in Tennessee. It does not i) own any property in Tennessee, ii) have employees who work in Tennessee, iii) direct any specific advertising to Tennessee or its residents, iv) purchase a substantial volume of materials from Tennessee sellers on a systematic or continuous basis, or v) routinely sell products to customers who reside in Tennessee.

3

2.  The events giving rise to the sale of the truck at issue in this dispute all occurred in Indiana except for phone calls between Plaintiffs and Damiron.  The Plaintiffs i) inspected the vehicle in Indiana, ii) negotiated its sale in Indiana, iii) entered into a contract for sale of it in Indiana, iv) consummated the sale in Indiana, and v) took delivery of it there.

3.  Damiron does not maintain "continuous and systematic contacts" with the State of Tennessee that would subject it to general personal jurisdiction here.

4.  Damiron did not specifically direct any of its activities to Tennessee or its residents and could not reasonably anticipate being haled into court here.  Therefore, Damiron is not subject to specific personal jurisdiction in this matter.

Based upon the foregoing findings, the trial court found that it lacked personal jurisdiction to hear the case and dismissed Appellants' complaint with prejudice.

## II.  Issues

Appellants appeal.  The sole issue for review is:

Whether the trial court erroneously dismissed the complaint for lack of personal jurisdiction.

## III.  Standard of Review

 "The plaintiff bears the ultimate burden of demonstrating that the trial court may properly exercise personal jurisdiction over a defendant." *Gordon v. Greenview Hosp., Inc.*, 300 S.W.3d 635, 643 (Tenn. 2009) (citing *Chenault v. Walker*, 36 S.W.3d 45, 56 (Tenn.2001); *Davis Kidd Booksellers, Inc. v. Day–Impex*, *Ltd.*, 832 S.W.2d 572, 577 (Tenn. Ct. App.1992)). However, "[t]his burden is ordinarily not a heavy one, because personal jurisdiction need only be demonstrated by a preponderance of the evidence." *Id.* (citations omitted).

A defendant may challenge personal jurisdiction by filing a Rule 12.02(2) motion to dismiss. *Gordon*, 300 S.W.3d at 643–44. The defendant may or may not choose to support its motion with affidavits or other evidentiary materials. *Id*. at 644 (citing *Humphreys v. Selvey*, 154

S.W.3d 544, 550 n. 5 (Tenn. Ct. App.2004)).[2] If the defendant does support its motion with affidavits, then "the plaintiff must establish its prima facie showing of personal jurisdiction over the defendant by filing its own affidavits or other written evidence." *Id*. (citing *Chenault*, 36 S.W.3d at 56; *Mfrs. Consolidation Serv., Inc. v. Rodell*, 42 S.W.3d 846, 854–55 (Tenn. Ct. App.2000)). "[T]he trial court's responsibility is to determine whether the plaintiff has alleged or presented sufficient facts to survive the motion to dismiss." *Id*. (citing *Progeny Mktg. v. Farmers & Merchs. Bank*, No. M2003–02011–COA–R3–CV, 2005 WL 819732, at *2 (Tenn. Ct. App. Apr.7, 2005). The trial court must take as true all of the factual allegations in the plaintiff's complaint and supporting papers, if any, and must resolve all factual disputes in the plaintiff's favor. *Id*. (citing *Chenault*, 36 S.W.3d at 56; *Mfrs. Consolidation Serv., Inc*., 42 S.W.3d at 855). "Dismissal is proper only if all the specific facts alleged by the plaintiff collectively fail to establish a prima facie case for personal jurisdiction." *Id*. (citing *Mfrs. Consolidation Serv., Inc.*, 42 S.W.3d at 855).

A decision regarding the exercise of personal jurisdiction over a defendant involves a question of law, which we review "de novo with no presumption of correctness for the purpose of determining whether the plaintiff has made out a prima facie basis for the exercise of personal jurisdiction over the defendant." *Gordon*, 300 S.W.3d at 645. The question before us, then, is whether, taking the plaintiff's factual allegations as true and resolving all reasonably disputed facts in the plaintiff's favor, the plaintiff has shown, by a preponderance of the evidence, that Tennessee courts may properly exercise jurisdiction over the defendant. *See State v. NV Sumatra Tobacco Trading Co.*, 403 S.W.3d 726, 739 (Tenn.2013).

## IV. Analysis

Tennessee's long-arm statute permits the courts of this state to exercise jurisdiction upon, among other bases, "'[a]ny basis not inconsistent with the constitution of this state or of the United States.'" *Mfrs. Consolidation Serv., Inc*., 42 S.W.3d at 855 (quoting Tenn. Code Ann. §§ 20–2–214(a)(6), 20–2–225(2)). "When a state's long-arm statute authorizes the assertion of personal jurisdiction to the limits of federal due process, as does Tennessee's long-arm statute, the issue becomes simply whether the trial court's exercise of personal jurisdiction over the defendant meets due process requirements." *Id*. "[D]ue process obligates the courts to ascertain whether it is 'fair and substantially just to both parties to have the case tried in the state where the plaintiff has chosen to bring the action.'" *Gordon*, 300 S.W.3d at 646 (quoting *Masada Inv. Corp. v. Allen*, 697 S.W.2d 332, 335 (Tenn.1985)). A state cannot enter a binding judgment against a defendant that has "'no contacts, ties or relations'"

---

[2] Unlike Rule 12.02(6) motions, Rule 12.02(2) motions "are not converted to motions for summary judgment when either or both parties submit matters outside the pleadings either in support of or in opposition to the motion." *Gordon*, 300 S.W.3d at 643 (citing *Chenault*, 36 S.W.3d at 55).

with the state. ***NV Sumatra***, 403 S.W.3d at 743 (quoting ***World–Wide Volkswagen Corp. v. Woodson***, 444 U.S. 286, 294, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). However, the United States Supreme Court announced long ago that "due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" ***International Shoe Co. v. Washington***, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting ***Milliken v. Meyer***, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)). The Court's "minimum contacts" language "has been the crux of personal jurisdiction in America ever since ***International Shoe*** was decided." ***NV Sumatra***, 403 S.W.3d 726 at 741–42 (Tenn. 2013).

"Federal and state courts now recognize two varieties of personal jurisdiction—specific jurisdiction and general jurisdiction." ***Gordon***, 300 S.W.3d at 647. "Specific jurisdiction may be asserted when the plaintiff's cause of action arises from or is related to the nonresident defendant's activities in or contacts with the forum state." ***Id***. In order to invoke specific jurisdiction, the plaintiff must show that the nonresident defendant has purposely established significant contact with the forum state and that the plaintiff's cause of action arises out of or is related to these activities or contacts. ***Id***. (citing ***Burger King***, 471 U.S. at 472, 105 S.Ct. 2174, 85 L.Ed.2d 528). General jurisdiction, on the other hand, "may be asserted when the plaintiff's cause of action does not arise out of and is not related to the nonresident defendant's activities in the forum state." ***Id.***

The Tennessee Supreme Court recently "reiterate[d] the law of specific personal jurisdiction, as it applies in Tennessee" in ***NV Sumatra Tobacco Trading Co.***, 403 S.W.3d at 746:

> Due process permits a state to enforce its judgments against a defendant only when the defendant has sufficient minimum contacts with the state that jurisdiction does not offend traditional notions of fair play and substantial justice. Minimum contacts are present when the defendant's purposeful conduct and connection with the forum state are such that the defendant avails itself of the benefits and protections of the state's laws and should, therefore, reasonably anticipate being haled into that state's courts.
>
> Assessing minimum contacts involves a two-part test. The first step is the fact-gathering exercise of identifying the relevant contacts. The plaintiff is required to establish that minimum contacts exist by a preponderance of the evidence. The court

6

should consider the quantity of the contacts, their nature and quality, and the source and connection of the cause of action with those contacts. A defendant's contacts are sufficiently meaningful when they demonstrate that the defendant has purposefully targeted Tennessee to the extent that the defendant should reasonably anticipate being haled into court here.

If the court finds sufficient minimum contacts, then the inquiry should proceed to the second step. At step two, the defendant bears the burden of showing that, despite the existence of minimum contacts, exercising jurisdiction would be unreasonable or unfair.

*Id.* at 759–60. "Both steps call for a careful, not mechanical, analysis of the facts of each case with particular focus on the defendant, the forum, and the nature of the litigation." ***Davis Kidd Booksellers***, 832 S.W.2d at 575.

Here, the quantity and quality of Damiron's contacts with the State of Tennessee are tenuous at best. As found by the trial court, Damiron is not registered to do business in Tennessee nor does it maintain any office in Tennessee. The corporation has no employees, vehicles, telephone listing, mailing address, or bank accounts in the State. There is also no evidence that Damiron solicited any business in Tennessee, or that it routinely purchased supplies or equipment from the State. The mere existence of a website is not a sufficient basis to support a finding that Damiron could "reasonably anticipate being haled into court [in Tennessee]." ***NV Sumatra Tobacco Trading Co.***, 403 S.W.3d at 746. This is especially true in light of the fact that all of the transactions concerning this vehicle, with the exception of the initial phone call (which was initiated by Mr. Wall), were conducted in Indiana. Moreover, all of the interested parties, except for Appellants, are located in Indiana and Michigan.

Furthermore, although Appellants contend that the alleged misrepresentation concerning the truck were not discovered until Mr. Wall brought the truck back to Tennessee, when addressing specific *in personam* jurisdiction, we must look to where Appellants' cause of action against Damiron originated. "A cause of action accrues when and originates where damages are sustained and are capable of ascertainment." ***Elmore v. Owens–Illinois, Inc.***, 673 S.W.2d 434, 436 (Mo. 1984). Undoubtedly, the consequences of any misrepresentations on the part of Damiron are felt in Tennessee; however, the place where Appellants' damages were sustained and capable of initial ascertainment was in Indiana, where the truck was available for inspection by Mr. Wall. Although it has been argued that foreseeability of causing injury in another State should be sufficient to establish such contacts there when policy considerations so require, the Court has consistently held that this kind of

7

foreseeability is not a "sufficient benchmark" for exercising personal jurisdiction. *World–Wide Volkswagen*, 444 U.S. at 295. Instead, "the foreseeability that is critical to due process analysis is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Id.* at 297. In defining when a potential defendant should "reasonably anticipate" out-of-state litigation, the Court frequently has drawn from the reasoning of *Hanson v. Denckla*, 357 U.S. 235, 253 (1958):

> The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

This "purposeful availment" requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts, *Keeton v. Hustler Magazine*, 465 U.S. 770, 774 (1984); *World–Wide Volkswagen*, 444 U.S. at 299, or of the "unilateral activity of another party or a third person," *Helicopteros Nacionales de Colombia*, 466 U.S. at 417. Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant himself that create a "substantial connection" with the forum State. *McGee v. Int'l Life Insurance Co.*, 355 U.S. 220, 223 (1957). Thus, where the defendant "deliberately" has engaged in significant activities within a State, *Keeton*, 465 U.S. at 781, or has created "continuing obligations" between himself and residents of the forum, *Travelers Health Assn. v. Virginia*, 339 U.S. 643, 648 (1950), he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by "the benefits and protections" of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well. *Burger King Corp.*, 471 U.S. at 474–76.

There is no showing here that Damiron purposely directed its activities to Tennessee residents. The contacts between Damiron and Tennessee resulted from Mr. Wall's unilateral pursuit of Damiron's services. The minor and attenuated contact that Damiron had with Tennessee during the initial telephone inquiry between Mr. Wall and the Damiron agent is insufficient to cause Damiron to reasonably anticipate being haled into court in Tennessee. Further, the Supreme Court, in *Burger King Corp.*, clarified the type of contacts sufficient to provide minimum contacts in cases involving contract negotiations:

8

> [W]e note a continued division among lower courts respecting whether and to what extent a contract can constitute a "contact" for purposes of due process analysis. If the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot. The Court long ago rejected the notion that personal jurisdiction might turn on "mechanical" tests, *International Shoe Co. v. Washington*, 326 U.S., at 319, or on "conceptualistic theories of the place of contracting or of performance," *Hoopeston Canning Co. v. Cullen*, 318 U.S., at 316. Instead, we have emphasized the need for a "highly realistic" approach that recognizes that a "contract" is "ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction." *Id.*, at 316–317. It is these factors—prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing—that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum.

471 U.S. at 478–79. Because the negotiations concerning the sale of the truck at issue here, and any alleged misrepresentations made regarding the truck's condition were conducted in Indiana, we conclude that Appellants have failed to establish a prima facie case of specific *in personam* jurisdiction. Because Damiron has no "minimum contacts" with Tennessee, we do not reach the second step of the specific *in personam* jurisdiction analysis.

In *Gordon*, our Supreme Court noted the distinction between specific and general *in personam* jurisdiction:

> Lest the distinction between the basis for specific jurisdiction and general jurisdiction be overlooked, we emphasize that the assertion of specific jurisdiction is appropriate only when the plaintiff's cause of action arises from or is related to the defendant's contacts with the forum state. However, general jurisdiction is appropriate when the plaintiff's cause of action does not arise from and is not related to the defendant's contacts with the forum state. Thus, when a plaintiff's cause of action is based on the defendant's activities in or contacts with the forum

9

state, specific jurisdiction, as opposed to general jurisdiction, applies. Therefore, consistent with the due process requirements of the federal and state constitutions, when a nonresident defendant's contacts with a forum state are substantial, systematic, and continuous, and the exercise of general jurisdiction satisfies the fairness requirement, the cause of action need not arise out of or relate to those contacts.

*Gordon*, 300 S.W.3d at 648-49 (footnote omitted). Accordingly, if jurisdiction lies in this case, it must be found under a general *in personam* jurisdiction analysis. In *Gordon*, our Supreme Court discussed general *in personam* jurisdiction analysis as follows:

[G]eneral jurisdiction may be asserted when the plaintiff's cause of action does not arise out of and is not related to the nonresident defendant's activities in the forum state. The threshold for satisfying the requirements for general jurisdiction is substantially higher than the requirements for establishing specific jurisdiction. 4 Charles Alan Wright & Arthur R. Miller Federal Practice and Procedure § 1067.5, at 517. An assertion of general jurisdiction must be predicated on substantial forum-related activity on the part of the defendant. The nonresident defendant's contacts with the forum state must be sufficiently continuous and systematic to justify asserting jurisdiction over the defendant based on activities that did not occur in the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. at 416, 104 S.Ct. 1868; *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. at 448, 72 S.Ct. 413; *Lindsey v. Trinity Commc'ns, Inc.*, 275 S.W.3d at 417; *see also* 4 Federal Practice and Procedure § 1067.5, at 507.

The general jurisdiction inquiry is very different from the specific jurisdiction inquiry. The United States Court of Appeals for the Fifth Circuit has pointed out that "[u]nlike the specific jurisdiction analysis, which focuses on the cause of action, the defendant and the forum, a general jurisdiction inquiry is dispute blind, the sole focus being on whether there are continuous and systematic contact between the defendant and the forum." *Dickson Marine, Inc. v. Panalpina, Inc.*, 179 F.3d 331, 339 (5th Cir.1999). In order to warrant the exercise of general jurisdiction over a nonresident defendant, "the defendant must

be engaged in longstanding business in the forum state, such as marketing or shipping products, or performing services or maintaining one or more offices there; activities that are less extensive than that will not qualify for general in personam jurisdiction." 4 <u>Federal Practice and Procedure</u> § 1067.5, at 507.

The proper analysis for determining whether a defendant's contacts are "continuous and systematic" enough to warrant an assertion of general jurisdiction requires ascertaining whether "the continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." ***Lindsey v. Trinity Commc'ns, Inc.***, 275 S.W.3d at 417 (quoting ***Int'l Shoe Co. v. Washington***, 326 U.S. at 318, 66 S.Ct. 154).

***Gordon***, 300 S.W.3d at 647-48 (footnote omitted).

As discussed above, Damiron has made no contacts with Tennessee other than maintaining a website that can be accessed by internet users in our State. But such activity is not "continuous and systematic," especially in light of the additional facts present here that the sale of the vehicle was negotiated and consummated in Indiana, and any alleged misrepresentations concerning the condition of the vehicle were made in Indiana. Although it may have been understood at the time of the sale that Mr. Wall intended to bring the truck back to Tennessee, this understanding was predicated upon Mr. Wall's unilateral inquiry with Damiron's agent, and the fact that Mr. Wall traveled to Indiana to procure the truck. The fact that Mr. Wall first discovered the truck for sale on Damiron's website and accessed that information while he was in Tennessee, is not the product of Damiron's "systematic and continuous" contacts with our state, but rather is the result of happenstance. Jurisdiction derived from such circumstances would clearly violate due process.

For the foregoing reasons, we affirm the order of the trial court. The case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed against the Appellants, Wall Transportation, LLC and Carl Wall, and their surety, for which execution may issue if necessary.

_____
KENNY ARMSTRONG, JUDGE